UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ROY L. PEARSON, JR.,                         )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   )          Civil Action No.08-00758 (ESH)
                                             )
DISTRICT OF COLUMBIA, *et al.*,              )
                                             )
                Defendants.                  )
_____)

DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(6) and 56(b), Defendants hereby move this Honorable

Court to dismiss the complaint as to all defendants based on plaintiff's failure to state a claim

upon which relief can be granted or, in the alternative, for summary judgment.

The grounds and the reasons are set forth more fully in the accompanying Memorandum

of Points and Authorities and proposed Order. As required by LCvR 56.1, a Statement of

Material Facts As to Which There is No Genuine Issue has been provided.

For the reasons discussed below, the Court should grant this motion because plaintiff's

claims are substantively meritless.

DATE: October 24, 2008            Respectfully submitted,

                                  PETER J. NICKLES
                                  Acting Attorney General for the District of Columbia

                                  GEORGE C. VALENTINE
                                  Deputy Attorney General, Civil Litigation Division

                                  _____/s/ Ellen A. Efros_____
                                  ELLEN A. EFROS, D.C. Bar No. 250746
                                  Chief, Equity Section I
                                  441 Fourth Street, N.W., 6th Floor South

Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431

     /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

|  |  |
|---|---|
| ROY L. PEARSON, JR., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
|  | ) |
| Defendants. | ) |

Civil Action No.08-00758 (ESH)

———————————————————————

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT

Defendants,[1] pursuant to Fed. R. Civ. P. 12(b)(6) and 56(b), have moved this Court to

dismiss the complaint or, in the alternative, for summary judgment. This memorandum of points

and authorities is provided in support of the defendants' dispositive motion in accordance with

---

[1]       Plaintiff has named as defendants in this case the District of Columbia; the Honorable Tyrone T. Butler, Chief Administrative Law Judge of the Office of Administrative Hearings; Peter M. Willner; the Honorable Robert R. Rigsby, Associate Judge, D.C. Superior Court; the Honorable Anita Josey-Herring, Associate Judge, D.C. Superior Court; and George C. Valentine, Deputy Attorney General for the District of Columbia. All the individual defendants are or were members of the Commission on Selection and Tenure of Administrative Law Judges of the Office of Administrative Hearings ("Commission").

Although plaintiff purports to sue the defendants in their individual capacities, "nothing in the complaint would support an allegation that any of the individuals acted outside of their official capacities or outside of their official authority," hence the claims should be construed "as if they were brought against the defendants only in their official capacities." *Thomas v. Knight*, 257 F.Supp.2d 86, 88 (D.D.C. 2003) (citing *Briggs v. Goodwin*, 569 F.2d 10, 15 (D.C. Cir. 1977)). This Court should follow the example of *Thomas*, where the Court dismissed the claims against various defendants, including the District of Columbia Court of Appeals and members of the Board on Professional Responsibility, on numerous grounds, including *inter alia*, immunity and lack of standing.

LCvR 7.1(a). As required by LCvR 56.1, a Statement of Material Facts As to Which There is No Genuine Issue ("SMF") has been provided.

The Court should deny the requested relief because plaintiff's claims are substantively meritless, even assuming the truth of the allegations.

## I. Introduction and Summary of Argument

The Court should deny the relief requested by plaintiff. The Complaint collapses of its own weight. In addition to being egregiously prolix, the Complaint fails to state a claim upon which relief may be granted. The "protected disclosures," even assuming their truth, do not—as a matter of law—rise to the level of those covered by the Whistleblower Protection Act.

Plaintiff's entire complaint is based on a fundamentally incorrect assumption—that Administrative Law Judges ("ALJs") must be "independent" akin to the members of the judicial branch of government. Notwithstanding the issue's immateriality in relation to the instant matter, plaintiff is incorrect as a matter of law; ALJs are *not* officers of the judicial branch of government, but a part of the executive branch.

Plaintiff had no entitlement to reappointment as an ALJ. The defendants did not "retaliate" in any way against plaintiff. The Commission afforded plaintiff numerous opportunities to present his case, and its decision declining to reappoint him comported fully with the mandates of the Constitution and local law.

## II. Factual and Procedural Background

In 2001, the District enacted the "Office of Administrative Hearings ["OAH"] Establishment Act." D.C. Law 14-76, 48 D.C. Reg. 11442 (eff. Mar. 6, 2002), *codified as*

*amended at* D.C. Official Code § 2-1831.01 *et seq.* (2007 Supp.); SMF ¶ 1. The OAH Act was designed to create a "centralized administrative hearing system" in the District. Defendants' Exhibit No. ("DEx.") 1 at 2 (Council of the District of Columbia, Committee on the Judiciary, Report on Bill 14-208, Sept. 25, 2001). Among the many purposes of the OAH Establishment Act was to "improve the integrity and quality of justice citizens receive," *id*. at 1, to ensure that citizens and businesses perceive "a fair and impartial, legitimate process for resolving administrative disputes," *id*., and to provide "more timely and efficient disposition of cases; and a more professional, detached cadre of hearing officers." *Id*.

The OAH Act also established the Commission on Selection and Tenure of Administrative Law Judges of the Office of Administrative Hearings ("Commission"). *See* D.C. Official Code § 2-1831.06; SMF ¶ 2. The Commission consists of three voting members, one appointed by the Mayor of the District of Columbia, one appointed by the Chairman of the Council of the District of Columbia (with the approval of a majority of the Council), and one appointed by the Chief Judge of the Superior Court of the District of Columbia. D.C. Official Code § 2-1831.07(a). The Attorney General, or his or her designee, and the Chief ALJ of OAH serve as non-voting, *ex officio* members of the Commission. *Id*.; SMF ¶ 2.[2]

---

[2]    Defendants Butler and Valentine are non-voting members of the Commission. Complaint ¶ 17. To have standing, a plaintiff must show (1) concrete, personal injury, (2) fairly traceable to the defendant's conduct, and (3) such injury is likely to be redressed if the relief sought is granted. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff lacks standing to sue defendants Valentine and Butler. Plaintiff has failed adequately to allege causation; he has not alleged any concrete injury "fairly traceable" to those defendants' conduct as members of the Commission; the allegations in the Complaint are insufficient to infer that those defendants "caused" the ultimate vote of the Commission—indeed, they could not, as non-voting members.

Members of the Commission receive no salary for their service. D.C. Official Code § 2-1831.07(e). Additionally, members of the Commission "shall have protection from liability as provided in § 2-415(b-1)." *Id.* at § 2-1831.06(d).[3]

"The Commission shall have final authority to appoint, reappoint, discipline, and remove Administrative Law Judges." *Id.* at § 2-1831.06(b); SMF ¶ 3. The Mayor duly promulgated initial rules "govern[ing] the process of selecting Administrative Law Judges." *Id.* at § 2-1831.11(d); SMF ¶ 3.[4] The Commission is empowered to "amend or repeal, in whole or in part, or may add to" the rules. D.C. Official Code § 2-1831.11(b); SMF ¶ 4.

Additionally, the Commission "may seek any information concerning an applicant that will assist it in determining whether the applicant satisfies any of the standards of this Chapter." 6 DCMR § 3703.7; SMF ¶ 4.[5]

---

[3]     D.C. Official Code § 2-415(b-1) reads:

The District of Columbia shall defend and indemnify members of the Commission on Selection and Tenure of Administrative Law Judges of the Office of Administrative Hearings, established by § 2-1831.06, from claims and suits in law or equity arising from acts or omissions in the course and scope of their official duties, other than willful or bad faith misconduct.

[4]     The regulations comprise Chapter 37 of Title 6 of the D.C. Municipal Regulations.

[5]     *See also id.*, § 3703.8 ("No person may be appointed or re-appointed to any term as an Administrative Law Judge who fails to provide any necessary release or fails to cooperate in any other way with the efforts of the Commission or any of its designees to obtain any of the information described in section 3703.7"); § 3703.9 ("[N]o person may be appointed as an Administrative Law Judge unless that person has obtained a passing grade on a qualifying examination devised and administered in accordance with section 3704."); § 3705.16 ("The Commission may request that an Administrative Law Judge appear personally or respond in writing to any questions or concerns it may have."); § 3705.19 ("An Administrative Law Judge who timely files a request to appear at the Commission's meeting shall have the right to appear and be heard at the meeting. In its discretion, the Commission may permit other persons to testify at the meeting, either in support of, or in opposition to, the request for reappointment."); § 3705.23 ("The Commission's decision on whether to reappoint the Administrative Law Judge

Eligible and qualified ALJs are appointed, after an application and interview process, by an affirmative vote by a majority of the voting members of the Commission. D.C. Official Code § 2-1831.08(b); 6 DCMR § 3701; SMF ¶ 5. *See also* 6 DCMR § 3703 ("Qualifications of Administrative Law Judges"). When an ALJ seeks reappointment, the Commission determines whether the candidate "has satisfactorily performed the responsibilities of his or her office and is likely to continue to do so." 6 DMCR § 3705.21; SMF ¶ 6.

ALJs are members of the "Excepted Service" pursuant to the District's Comprehensive Merit Personnel Act. D.C. Official Code § 2-1831.08(b); § 1-609.05 ("Employees in the Excepted Service . . . do not have any job tenure or protection."); SMF ¶ 7. *See also* D.C. Official Code § 1-609.08(15) (ALJs "deemed to be in the Excepted Service. Their terms of office shall be at the pleasure of the appointing authority . . . .").

Plaintiff began work as an ALJ with the OAH on May 2, 2005. Complaint ¶ 54; SMF ¶ 8. Plaintiff, in June of 2005, wrote and distributed a 19-page memorandum regarding his belief that the OAH's use of a "peer review" system (where ALJs review and comment on others' draft opinions) "appeared to violate the OAH Act, the D.C. Administrative Procedures [sic] Act and the OAH Code of Judicial Ethics." Complaint ¶ 74; SMF ¶ 9; copy of memo attached as DEx. 2. Plaintiff also sent a letter to the Commission, the following month, with a copy of the memo, asking the Commission "to provide an advisory ethical opinion" on the peer-review process. Complaint ¶ 78; SMF ¶ 10; copy of letter attached as DEx. 3. Plaintiff also wrote to the Mayor in July of 2005, complaining, *inter alia*, of defendant Butler's alleged "unprofessional, unethical

---

shall be final, and a decision not to reappoint an Administrative Law Judge shall not be deemed to be disciplinary action."); § 3705.24 ("Any decision by the Commission not to reappoint an Administrative Law Judge shall be reviewable only to the same extent as a decision of the District of Columbia Commission on Judicial Disabilities and Tenure giving an evaluation of 'Unqualified.'").

and threatening conduct, and his violation of the Whistleblower Act," and requested an inquiry into whether "good cause" existed for defendant Butler's removal. Complaint ¶ 89; SMF ¶ 11; copy of letter attached as DEx. 4. The Mayor's office ultimately declined to take action against defendant Butler, even assuming the truth of plaintiff's allegations. *See* DEx. 5; SMF ¶ 11.

In February, 2006, plaintiff provided testimony before the Judiciary Committee of the Council of the District of Columbia on "Proposed Amendments to Clarify and Strengthen Decisional Independence for Administrative Law Judges in 'the Office of Administrative Hearings Establishment Act of 2001." Complaint ¶ 80; SMF ¶ 12; copy of testimony attached as DEx. 6.

In November, 2006, plaintiff submitted his statement for reappointment as an ALJ to the Commission, pursuant to 6 DCMR § 3705. Complaint ¶ 118; SMF ¶ 13; copy of statement attached as DEx. 7. As required, the Commission published, in the D.C. Register, notice of plaintiff's statement, and sought comments on plaintiff's reappointment. *See* 53 D.C. Reg. 9265 (Nov. 10, 2006); SMF ¶ 14.

Defendant Butler prepared and submitted, in March, 2007, the required record for the Commission's review, noting that he did "not oppose the reappointment of" the plaintiff. SMF ¶ 15; copy of submission attached as DEx. 8. *See* Complaint ¶ 123; D.C. Code § 2-1831.10(b); 6 DCMR § 3705.4.

By letter dated March 8, 2007, defendant Butler responded to the Commission's request for clarification, with a copy to plaintiff, stating that he recommended plaintiff for re-appointment. *See* DEx. 9. The following day, plaintiff sent an e-mail to all ALJs at OAH, Complaint ¶ 127, stating (in whole):

> From: Pearson, Roy (OAH)
> Sent: Friday, March 09, 2007 10:10AM

To: OAH-ALJs
Subject: FYI: THE RISK CALCULUS AT OAH

Colleagues:

Some of you have expressed interest in whether, despite my history at OAH of publicly "speaking truth to power," the Chief Judge would recommend my reappointment to a 10 year term.

You certainly take a risk at OAH when you stand on principle and expose wrongdoing, and you can certainly expect retaliation. But if you compile a record that makes a retaliatory motive obvious you can at least make it difficult for CJ Butler to knife you.

The Chief Judge initially submitted a statement of neutrality regarding my reappointment request. However, when the Commission on the Selection and Tenure of Administrative Law Judges rejected it, and demanded he comply with the OAH Act, he was forced to submit a favorable recommendation for my reappointment.

I recognize that most of you don't believe you have the luxury of putting your job at risk by standing up for judicial independence, or any other fundamental ethical or legal principle at OAH. As an African American however, I am conscious, that the "risks" I take pale in comparison with the life and death consequences my forbearers in struggle faced in speaking truth to power -- when there were no laws on the books to even theoretically protect them.

If they could risk losing their lives, I can't justify being paralyzed by fear of losing a paycheck.

Roy

*See* DEx. 12 at 2.

On March 21, 2007, defendant Butler transmitted supplemental information requested by the Commission on the reappointment. SMF ¶ 16; copy of submission attached as DEx. 10. Plaintiff, on or about April 19, 2007, provided a written response to the March 21 submission. SMF ¶ 17; copy of response attached as DEx. 11.

The Commission met with plaintiff on April 24, 29 and 30, 2007, to discuss his possible reappointment. Complaint ¶ 136; SMF ¶ 18. On May 22, 2007, defendant Butler made an

additional submission to the Commission, withdrawing his previous recommendation. *See* DEx. 12; SMF ¶ 19.

On August 7, 2007, the Commission provided written notice to plaintiff, pursuant to D.C. Code § 2-18-31.10 and 6 DCMR § 3705.17, of the "grounds for possible denial of your reappointment . . . ." DEx. 13; Complaint ¶ 165; SMF ¶ 20. The notice detailed the areas of concern of the Commission, and explicitly alerted plaintiff of his right to provide a written response and to request an opportunity to appear. DEx. 13. On or about August 22, 2007, plaintiff submitted a written response and requested an opportunity to appear before the Commission. DEx. 14; SMF ¶ 21.

Starting October 4, 2007, the Commission held a series of meeting regarding plaintiff's reappointment, hearing from a number of persons, including agency counsel and other ALJs at OAH, all of whom opposed plaintiff's reappointment. *See* DEx. 15 at 3; SMF ¶ 22.[6]

Plaintiff appeared again before the Commission for two meetings lasting over seven hours, on October 11 and 15, 2007. SMF ¶ 23; Complaint ¶ 176.[7] The Commission ultimately determined not to reappoint plaintiff, citing, *inter alia*, "a pattern of conduct on your part that indicates a lack of judicial temperament and judgment in the conduct of your judicial duties, which are quintessential requirements of your position." DEx. 15 at 8 (citing D.C. Code § 2-1831.08(d)(5) and 6 DCMR § 3703.5); SMF ¶ 24.

Plaintiff filed suit on or about May 1, 2008, making a number of claims. Specifically, plaintiff alleges that the defendants, in declining to reappoint him to a position as ALJ, violated

---

[6]     Plaintiff submitted additional materials to the Commission on October 1, 11, and 15, 2007. *See* DEx. 15 at 2. These submissions are attached here (as a whole) as DEx. 17.

[7]     Although the plaintiff was offered the opportunity to present witnesses on his behalf at these meetings, *see* DEx. 16, he did not do so.

his First Amendment rights by retaliating against him based on his testimony to the Council. Complaint ¶¶ 182–194 (Count I). Plaintiff also alleges that the defendants so acted pursuant to the "policy and custom" of the District. Complaint ¶¶ 195–205 (Count II). Plaintiff also alleges that defendants, in declining to reappoint him, violated his First Amendment and Equal Protection rights "to file and prosecute a lawsuit . . . ." Complaint ¶ 207 (Count III, ¶¶ 206–222). Plaintiff similarly alleges that the defendants so acted pursuant to the "policy and custom" of the District. Complaint ¶¶ 223–233 (Count IV). Plaintiff also alleges that the defendants, in declining to reappoint him, violated his rights to Equal Protection and substantive and procedural due process. Complaint ¶¶ 234–242 (Count V). Plaintiff similarly alleges that the defendants so acted pursuant to the "policy and custom" of the District. Complaint ¶¶ 243–254. Plaintiff also alleges that the defendants violated the D.C. Whistleblower Protection Act ("WPA"), D.C. Official Code §§ 1-615.51 *et seq.* (2007 Supp.). Complaint ¶¶ 255–268 (Count VII). Finally, plaintiff alleges that the defendants, through their behavior, committed the tort of intentional infliction of emotional distress. Complaint ¶¶ 269–273 (Count VIII).

### III. Argument

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the allegations in the complaint as true. *See*, *e.g.*, *Croixland Properties Ltd. Partnership v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999). All reasonable inferences must be drawn in favor of the plaintiff, and a court should only dismiss a complaint for failure to state a claim "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (quoting *Hishon v.*

*King & Spaulding*, 467 U.S. 69, 73 (1984)); *see also Price v. Crestar Secs. Corp.*, 44 F. Supp. 2d 351, 353 (D.D.C. 1999).

"While a complaint attacked by a rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' for 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise the right of relief above a speculative level." *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964–65 (2007) (internal citations omitted).

In a Rule 12(b)(6) analysis, while the complaint is to be construed liberally, the Court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Moreover, while the court "must assume the truth of all statements proferred by the party opposing summary judgment," it need not consider wholly conclusory statements for which no supporting evidence is offered. *Greene v. Dalton*, 164 F.3d 671, 674–75 (D.C. Cir. 1999).

It is insufficient, to avoid summary judgment, that some factual issues remain in the case; an issue must be both *genuine* and *material* to preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "complete failure of proof concerning an essential element of the non-moving party's case necessarily renders other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All of the allegations in the Complaint fail as a matter of law. No factual development can resuscitate them. What plaintiff claims is a malicious deprivation of his constitutional rights is nothing more than the conscientious exercise of discretion by dedicated public servants in making a government personnel decision.

While it is axiomatic that the Court, on a motion to dismiss, must accept the allegations in the complaint as true, that trope does not apply here, where plaintiff makes only conclusory statements without any factual support. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (where claim "rests entirely upon a conclusory representation, the district court was right to dismiss it."). *See also Herbage v. Meese*, 747 F.Supp. 60, 65 (D.D.C. 1990) ("Something stated as fact does not make it fact. 'A plaintiff's bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted' for purposes of a motion to dismiss . . . .") (citations omitted), *aff'd without op.*, 946 F.2d 1564 (D.C. Cir. 1991).

Plaintiff cannot succeed. Plaintiff complains, essentially, not of a *lack* of due process, but the *results* of that process. As shown herein, the defendants fully, fairly, and carefully reviewed all the materials submitted as part of plaintiff's reappointment request, and ultimately declined to reappoint him. Such a result does not violate the Constitution.

Notwithstanding that plaintiff is an attorney, complaints filed without the assistance of counsel are held to "less stringent standards than formal pleadings drafted by lawyers." *Williams v. Moore*, 899 F.Supp. 711, 712 (D.D.C. 1995) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, "a *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Id.* (quoting *Henthorn v. Department of the Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)).

A. *The Defendants Are Shielded from Liability by Immunity.*

All the individual defendants here are entitled to absolute immunity, as they acted in roles functionally comparable to judges.

Questions of absolute immunity should be decided as early in the case as possible. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976) ("An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.").

"Absolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation." *Burns*, 500 U.S. at 494. Moreover, absolute immunity extends to prevent interference with "conduct closely related to the judicial process." *Id.* (citing *Forrester v. White*, 484 U.S. 219, 224 (1988)). "Courts have extended absolute immunity to a wide range of persons playing a role in the judicial process[,]" including prosecutors, law clerks, probation officers, and arbitrators. *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994) (citing cases).

Case law has long extended absolute immunity to individuals who exercise functions similar to those of the instant defendants. *See, e.g., Butz v. Economou*, 438 U.S. 478, 512–14 (1978) (extending absolute immunity to federal agency hearing examiners who are "functionally comparable" to judges); *Bettencourt v. Bd. of Registration in Med. of Commonwealth of Massachusetts*, 904 F.2d 772, 782–84 (1st Cir. 1990) (member of medical-licensing board who "weighs evidence, makes factual and legal determinations, chooses sanctions, writes opinions explaining his decisions, serves a set term" is "functionally comparable" to a judge); *Buser v. Raymond*, 476 F.3d 565, 571 (8th Cir. 2007) (chief medical officer of Nebraska in conducting physician disciplinary proceedings); *Watts v. Burkhart*, 978 F.2d 269 (6th Cir. 1992) (*en banc*)

(members of state medical-licensing board who preside over hearings and determine fitness to practice medicine).

The defendants here are in the same position: they serve set terms, weigh documentary and oral evidence, make "ultimate" determinations regarding appointment or reappointment, and write opinions explaining their decisions. They are entitled to absolute immunity.

In the District of Columbia, absolute immunity applies when the challenged conduct is within the "outer perimeter" of official duties and the governmental function at issue is "discretionary" rather than "ministerial." *District of Columbia v. Jones*, 919 A.2d 604, 608 (D.C. 2007) (citing *Moss v. Stockard*, 580 A.2d 1011, 1020 (D.C. 1990) and *Westfall v. Erwin*, 484 U.S. 292, 297–98 (1988) (two-pronged standard for federal officials now superseded by federal statute)).

If the official acts "in relation to matters committed by law to his control or supervision," he is entitled to absolute immunity. *Moss*, 580 A.2d at 1020 (citing *Barr v. Mateo*, 360 U.S. 564, 573–74 (1959)).

Here, it cannot fairly be questioned that the defendants were acting in relation to matters committed by law to their control. As discussed below, the Commission members are given substantial discretion in evaluating candidates for appointment or reappointment as ALJs. *See also* SMF ¶¶ 3–6.

Courts must "balance the contending interests and determine whether society's concern to shield the particular government function at issue from the disruptive effects of civil litigation requires subordinating the vindication of private injuries otherwise compensable at law." *Jones*, 919 A.2d at 609 (quoting *Moss*, 580 A.2d at 1020–21). Factors a court may include in this balancing are (1) the nature of the injury, (2) the availability of alternative remedies, (3) the

ability to find fault without "unduly invading the executive's function," and (4) the importance of protecting particular types of acts. *Id.*

Here, all these factors weigh in favor of the defendants. Because plaintiff does not claim physical injury, the first factor balances in favor of conferring absolute immunity. *Jones*, 919 A.2d at 609 (citing, *inter alia*, *District of Columbia v. Simpkins*, 720 A.2d 894, 898 (D.C.1998)). While the second factor is "less clear" because plaintiff, like the *Jones* plaintiff, was a member of the Excepted Service, *see id.*, the third and fourth factors "heavily balance in favor of shielding [the defendants] from the disruptive effects of litigation." *Id.* at 609–610.

Notwithstanding the lack of merit of plaintiff's claims, it is unclear how the Court could determine "fault" here without a serious invasion (through discovery) of the executive function of the process of appointing and reappointing ALJs, "going behind" and second-guessing the Commission's decision.[8] Moreover, allowing lawsuits against individual Commission members would clearly deter potential candidates from an important public service.

The types of discretionary personnel actions at issue here are exactly the types deserving of court protection from such inappropriate intrusions. *See, e.g., Engquist v. Oregon Dep't of Agriculture*, ___ U.S. ___, 128 S.Ct. 2146, 2151 (June 9, 2008) (discussed *infra* at 30)

---

[8]     If the existing record is insufficient for a court to make a determination on the question of absolute immunity, discovery may be necessary, particularly if there is a question as to the motives of the government actors. *Jones*, 919 A.2d at 610. Here however, discovery is unnecessary as well as inappropriate. *See, e.g., Barr*, 360 U.S. at 575 ("The claim of an unworthy purpose does not destroy the privilege."). "Permitting inquiry into the official's motives would defeat the very purpose of absolute immunity. A determined litigant could always assert an improper motive, and the official would be required to shoulder the burden of responding to discovery, and perhaps enduring a trial, to explore those motives." *Jones*, 919 A.2d at 611 (footnote omitted). This is exactly what the doctrine of absolute immunity is designed to protect against. Indeed, the District avers that plaintiff's wholly unsupported allegation of an "off-the-record" agreement on reappointment, *see* Complaint ¶¶ 140, 142, is a blatant attempt to look for reasons beyond the existing record and to inappropriately invade the thought-processes of the decisionmakers.

("government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large.").

Factors to be considered in an absolute immunity analysis include whether the functions of the challenged official are comparable to those of a judge, "whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect," and whether there are "safeguards" to justify doing away with private damage suits to control the alleged unconstitutional conduct. *Wagshal*, 28 F.3d at 1252 (citing, *inter alia*, *Butz*, 438 U.S. at 512).

Here, the defendants easily meet this test—the continuing harassment and intimidation of Commission members is unquestionably a realistic prospect.[9]

The Commission has "final authority to appoint, reappoint, discipline, and remove Administrative Law Judges." D.C. Official Code § 2-1831.06(b); SMF ¶ 3. The Commission is also empowered to amend, repeal or promulgate rules in this process. D.C. Official Code § 2-1831.11(b); SMF ¶ 4. The Commission also "may seek any information concerning an applicant that will assist it in determining whether the applicant satisfies any of the standards of this Chapter." 6 DCMR § 3703.7; SMF ¶ 4. The Commission is charged with devising and administering a "qualifying examination" for candidates. 6 DCMR § 3703.9; SMF ¶ 4; *see also* 6 DCMR § 3705.16 ("The Commission may request that an Administrative Law Judge appear personally or respond in writing to any questions or concerns it may have."); § 3705.19 ("In its

---

[9]     *See, e.g., Simons v. Bellinger*, 643 F.2d 774, 782 (D.C. Cir. 1980) (members of court-appointed committee are "officers" subject to writs of mandamus; "these writs effectively restrain improper action without adding the extra deterrent of monetary damages."); *id.* (because committee members are appointed to "brief three-year terms," the safeguards built into the process at the time of appointment are "capable of deterring, or correcting, unconstitutional conduct. The presence of these checks reduces the need for private causes of action and thereby renders absolute immunity appropriate.") (footnote omitted).

discretion, the Commission may permit other persons to testify at the meeting, either in support of, or in opposition to, the request for reappointment."). Finally, the Commission is broadly charged with determining whether an ALJ seeking reappointment "has satisfactorily performed the responsibilities of his or her office and is likely to continue to do so." 6 DCMR § 3705.21; SMF ¶ 6.

"These [tasks] obviously involve substantial discretion, a key feature of the tasks sheltered by judicial immunity." *Wagshal*, 28 F.3d at 1252.

Controlling and persuasive case law indicates that absolute immunity protects the individual defendants here. *See Wagshal*, 28 F.3d at 1253 (citing *Simons*, 643 F.2d at 780–82 (extending absolute immunity to court-appointed committee monitoring the unauthorized practice of law)); *In re Banks*, 805 A.2d 990, 1001 (D.C. 2002) (recognizing absolute immunity for damages conferred on court-appointed committee). *Cf. Powell v. Nigro*, 601 F.Supp. at 148 (members of the committee on admissions "are entitled to absolute immunity for those acts where they exercise judge-like discretion").

"Perhaps, without this immunity, membership on the Committee would be transformed from a distinguished achievement in public service into an invitation to become a defendant in costly, time-consuming litigation." *Simons*, 643 F.2d at 782.

*Qualified Immunity*

Even if the Court determines that absolute immunity is inappropriate here, it is well-established that qualified immunity shields government officials from liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See also Farmer v. Moritsugu*, 163 F.3d 610, 613

(D.C. Cir. 1998).[10] Questions of qualified immunity should be resolved "at the earliest possible stage of the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Where an official's conduct is objectively reasonable in light of existing law, that official will enjoy protection from liability. See *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). An official is entitled to summary judgment on qualified immunity grounds unless "the contours of the right [were] sufficiently clear that a reasonable official would [have] understood that what [she was] doing violated that right." *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C. Cir. 1991) (quoting *Anderson*, 483 U.S. at 640). Where, however, "an official could be expected to know that certain conduct would violate statutory or constitutional rights," that official may be vulnerable to suit by one who suffers injury. *Harlow*, 457 U.S. at 819.

A court evaluating a claim of qualified immunity must first determine whether plaintiff has alleged the deprivation of an actual constitutional right and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Stewart v. Evans*, 351 F.3d 1239, 1243 (D.C. Cir. 2003) (*quoting Wilson v. Layne*, 526 U.S. 603, 609 (1999)). If no constitutional right has been violated, there is no need determine whether that right is "clearly established." *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Moreover, qualified immunity takes into account the fact that reasonable government employees may make reasonable mistakes. *Anderson*, 483 U.S. at 641. Thus, where employees

---

[10]     *See Jones*, 919 A.2d at n.11:

For an explanation of how qualified immunity differs from absolute immunity, and how analysis of official immunity differs depending on whether it arises in response to a claim of common law tort or a complaint that constitutional rights have been violated, *see Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Inst.*, 184 U.S.App. D.C. 397, 400–402, 566 F.2d 289, 292–94 (1977) (*en banc*).

of "reasonable competence" could disagree on the issue, qualified immunity "should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Johnson v. District of Columbia*, 445 F.Supp.2d 1, 10 (D.D.C. 2006) (quoting *Anderson*, 483 U.S. at 640).

Plaintiff's allegations do not state a cognizable claim of any constitutional wrongdoing by any of the defendants. A reasonable official in defendants' situation could have believed that their conduct did not violate plaintiff's constitutional rights. *Id. See also Mumford v. Zieba*, 4 F.3d 429, 433 (6th Cir. 1993) (affirming grant of qualified immunity to state judge on claim that decision to not reappoint domestic-relations referee was made for impermissible "political reasons").

There is no clearly established law that the individual defendants knowingly violated. Additionally, "'bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery.'" *Crawford-El v. Britton*, 523 U.S. 574, 588 (1988) (quoting *Harlow*, 457 U.S. at 817–18)).

"Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Davis v. Scherer*, 468 U.S. 183, 190 (1984).[11]

The District asserts that exposing defendants to personal liability in these circumstances would be at odds with the policies underlying the doctrine of qualified immunity. *See Harlow*, 457 U.S. at 806, 814. The risk of personal liability would make it virtually impossible for governments to fill positions like those on the Commission, as few qualified persons would be

---

[11]    *See also Scheuer v. Rhodes*, 416 U.S. 232, 247–48 (1974) (availability of qualified immunity depends on "the existence of reasonable grounds for belief formed at the time and in light of all the circumstances, coupled with good faith belief . . . .").

willing to assume this responsibility with the accompanying risks of liability. The District cannot be expected to operate in this way, and government officials should not be expected to assume this type of liability. *See Farmer*, 163 F.3d at 616.

The individual defendants are entitled to qualified immunity on plaintiff's claims.

### B. Plaintiff Was Not Deprived of Substantive Due Process.

The first step in any due process analysis is "to determine whether constitutional safeguards apply at all, *i.e.*, whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection." *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594 (D.C. Cir. 1993) (citing *Cleveland Bd. of Education v Loudermill*, 470 U.S. 532, 538–41 (1985)). *See also Bloch v. Powell*, 348 F.3d 1060, 1068 (D.C. Cir. 2003) (to have a property interest in a government benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.") (*quoting Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

"To show a property interest in government employment, a plaintiff must demonstrate that under the relevant state law, 'he did not serve in his job at the employer's "will," but he could be removed only 'for cause.'" *Thompson v. District of Columbia*, 478 F.Supp.2d 5, 9 (D.D.C. 2007) (citing, *inter alia, Bishop v. Wood*, 426 U.S. 341, 344–47 (1976)). Plaintiff cannot make the required showing.

It cannot be reasonably questioned that "there is no fundamental right to government employment." *United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 219 (1984); *see AFGE, AFL-CIO v. United States*, 330 F.3d 513, 523 (D.C. Cir. 2003).

Plaintiff does not have a legitimate claim of entitlement to reappointment here. Plaintiff was an "Excepted Service" employee. D.C. Official Code §§ 1-609.05, 1-609.08(15), 2-1831.08(b). "The phrase 'at the pleasure of' customarily means 'at the will of the employer.'" *Winder v. Erste*, 511 F.Supp.2d 160, 178 (D.D.C. 2007) (citations omitted). Such employees have no legitimate expectations of continued employment. *Id.*

"[A]n at-will employee has no liberty or property interest in continued employment, and it is clear that D.C. law creates no such interest." *O'Donnell v. Barry*, 148 F.3d 1126, 1139 (D.C. Cir. 1998). *See also, e.g., Piroglu v. Coleman*, 25 F.3d 1098, 1104 (D.C. Cir. 1994) ("Typically, permanent and classified employees have been held to have property interests . . . while probationary and nonclassified employees have not." "Those who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely.") (quoting, *inter alia*, *Hall v. Ford*, 856 F.2d 255, 265 (D.C.Cir.1988)).

"The threshold for such a constitutional violation is unclear, but this court has held that a mere violation of law does not give rise to a due process claim." *Am. Fed'n of Gov't Employees, Local 446 v. Nicholson*, 475 F.3d 341, 353 (D.C. Cir. 2007) (citations omitted). *See also Duckett v. Quick*, 282 F.3d 844, 848 (D.C. Cir. 2002) (although "obvious" that agency failed to comply with D.C. regulations, due process was not violated thereby) (citing *Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644, 648–49 (D.C. Cir. 1987) (state does not violate individual's due process rights by deviating from its own procedures)).

"Once a [constitutional] interest is found, however, the doctrine of substantive due process constrains only egregious government misconduct." *George Washington Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003) (*citing Silverman v. Barry*, 845 F.2d

1072, 1080 (D.C. Cir. 1988) (doctrine prevents only "grave unfairness"), *cert. denied*, 488 U.S.

956 (1988)); *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (*per curiam*).[12]

In assessing the conduct of the District in this case against the substantive component of due

process, "the threshold question is whether the behavior . . . [was] so egregious, so outrageous, that

it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523

U.S. 833, 847 n.8 (1998). Plaintiff cannot make such a dramatic showing. The District's conduct

here simply did not rise to the extreme level necessary to violate substantive due process, as case

law amply demonstrates.

In this Circuit, a substantive due process claim is limited "to actions that in their totality

are genuinely drastic." *Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 459

(D.C. Cir. 1997). The District's action here falls far short of this standard, which is regularly

reaffirmed by the Supreme Court. *See, e.g., City of Cuyahoga Falls v. Buckeye Community Hope

Found.*, 538 U.S. 188 (2003) (unanimous decision) ("[O]nly the most egregious official conduct

can be said to be 'arbitrary in the constitutional sense.'" (*quoting County of Sacramento v. Lewis*,

523 U.S. 833, 846 (1998)). Plaintiff cannot show such misconduct here. Plaintiff's substantive

due process claims must be dismissed.


*C. Plaintiff Was Not Deprived of Procedural Due Process.*

Plaintiff has not been deprived of *any* constitutionally protected rights. Plaintiff can point to

no "entitlement" of which he has been denied without due process. *See Tri County*, 104 F.3d at 460

---

[12]     *Silverman* identified two ways by which a plaintiff might show such unfairness:
"a substantial infringement of state law prompted by personal or group animus, or a deliberate
flouting of the law that trammels significant personal or property rights . . . ." *Silverman*, 845
F.2d at 1080. *See also GWU*, 318 F.3d at 209 (*quoting Silverman*). Plaintiff fails to state a claim
under either standard.

(in procedural due process analysis, "the central issue is the adequacy not of [the agency director's] facts but of the *process* that he purported to follow.").

> It is clear that state law which generates a legitimate claim of entitlement can create an interest the deprivation of which triggers application of the Due Process Clause. It is equally clear, however, that state-created *procedures* do not create such an entitlement where none would otherwise exist. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."

*Doe by Fein v. District of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996) (*per curiam*) (emphasis in original) (*quoting Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983)).

Generally, procedural due process requires the government only to provide the allegedly deprived party "notice and opportunity for hearing appropriate to the nature of the case." *Jones v. Flowers*, 547 U.S. 220, 224 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

The District here easily satisfied that standard, even assuming a "deprivation," as plaintiff himself admits that he was provided multiple opportunities to submit documents and meet with the Commission. Complaint ¶¶ 118, 135, 136, 165, 166, 176. *See also* SMF ¶¶ 13, 17–18, 21, 23. The record evidence is overwhelming that the defendants went out of their way to provide much more process than was due.

By plaintiff's own admission, Complaint ¶¶ 135, 136, 166, 176, he had ample opportunities to present his case; due process requires no more. *See Lightfoot v. District of Columbia*, 448 F.3d 392, 401 (D.C. Cir. 2006) (*per curiam*) (Silberman, J., concurring) ("[T]he Supreme Court's due process jurisprudence carefully distinguishes process from substance. The issue is always, in its due process cases, whether or not the claimant has had a fair opportunity— sometimes rather informal—to present his case and not whether the agency's substantive

decision was reasonable."). *See also American Towers*, 146 F.Supp.2d 27, 33 (D.D.C. 2001), *aff'd without opinion*, 50 Fed. Appx. 448 (D.C. Cir. 2002).

The decision in *Halleck v. Berliner*, 427 F.Supp. 1225 (D.D.C. 1977) has many parallels to the instant matter, and so is discussed in some detail. There, a judge of the Superior Court of D.C. brought suit in conjunction with the denial of his reappointment. *Id*. at 1231–32. The judge alleged that the powers given to the D.C. Commission on Judicial Disabilities and Tenure to evaluate candidates for reappointment and make recommendations to the President "encroach upon judicial independence" and thus violate the separation-of-powers doctrine. *Id*. at 1233.[13] The court rejected that claim, finding that the judges who are appointed and confirmed according to the system set by Congress (exercising its legislative power over the District of Columbia) "are not Article III judges, and do not have the tenure and salary protection accorded by Article III." *Id*.

The court specifically found that the "evaluation function" of judicial candidates was previously served by the executive and legislative branches of the federal government, and its statutory delegation to the Commission "does not encroach upon the independence of the judiciary of the District of Columbia." *Id*. at 1234.

The court also found that

[P]laintiff did not have a property interest which entitled him to the full panoply of due process; but that he did have an interest in possible reappointment which entitled him to a thorough and fair evaluation of his candidacy by an impartial Commission; and that plaintiff was entitled to such process as would insure that

---

[13]     The Commission, in declining to recommend the judge for reappointment, noted that while the judge's decisions "display impressive research and legal scholarship," it was concerned with "patterns of conduct which reflect adversely upon his fitness for reappointment" including incidents where he "criticize[d] and disparage[d] fellow members of the judiciary," his documented "impatient, undignified and discourteous" treatment of others, and his "resorts to sarcasm, banter, rudeness and other unjudicial conduct." *Id*. at 1249.

the Commission's evaluation of his candidacy for reappointment was thorough and fair.

*Id*. at 1236 (footnote omitted).

The court found that plaintiff had been accorded due process, because the Commission had notified him of the areas of its concern, advising him of the specific incidents that gave rise to such concern, had afforded him a day-long hearing and an opportunity to respond to the Commission's inquiries, in documentary form and orally. *Id.*

Identically here, even if plaintiff had been a true Article III judge, his assertions of violations of "decisional independence" would still be wrong as a matter of law. Moreover, the Commission here gave plaintiff much more than due process, providing repeated opportunities to submit documents and meet with the Commission to argue for his reappointment, and thoroughly and fairly evaluating the record. Complaint ¶¶ 118, 135, 136, 165, 166, 176.

Plaintiff received multiple, detailed explanations of the record at issue in his case, as well as copies of all documentary evidence. *See* DEx. 13, 15. Plaintiff was heard by the Commission on no less than five separate occasions. Complaint ¶¶ 135, 136, 176; SMF ¶¶ 18, 23.

Plaintiff's due process claims must be dismissed. *Halleck*, 427 F.Supp. at 1236. *See also Bason v. Judicial Council of the District of Columbia Circuit*, 86 B.R. 744, 750 (D.D.C. 1988) (incumbent bankruptcy judge not selected for reappointment not likely to succeed on procedural due process claim, where he received a "fair, thorough, and impartial evaluation" by Council members). *See also Levine v. McCabe*, 357 F.Supp.2d 608, 617 (E.D.N.Y. 2005) (rejecting due process claim by retired judge denied appointment as hearing officer because, *inter alia*, New York's scheme for appointing hearing officers gave "extensive discretion" to determine

applicant's qualifications and to make the "ultimate determination" as to who should be appointed).[14]

### D. Plaintiff Cannot Establish Municipal Liability Under 42 U.S.C. § 1983.

To hold the District liable under 42 U.S.C. 1983, a plaintiff must show that the District implemented or executed a policy or custom that causes the deprivation of plaintiff's constitutional rights. *Monell v. Dept. of Social Svcs*, 436 U.S. 658, 690–91 (1978); *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) (*per curiam*). Plaintiff thus has the burden of proving (1) that he was deprived of constitutional rights, and (2) that the deprivation was caused by a policy or custom of the District. *Id.* (*citing Atchison v. District of Columbia*, 73 F.3d 418, 420 (D.C. Cir. 1996)).

Plaintiff alleges that the District is liable "under *respondeat superior*" for the actions of the other defendants. Complaint ¶ 272. But the Supreme Court long ago rejected such a claim. *Monell*, 436 U.S. at 691 ("a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

---

[14] Courts have long noted, under the protections of due process, a distinct "liberty interest" in the pursuit of a particular profession free of unreasonable government interference. *See, e.g., Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003). Typically, a plaintiff asserting such a claim alleges "stigmatizing statements" made by defendants as part of an adverse personnel action. *Winder*, 511 F.Supp.2d at 180–81. Notwithstanding that the words "liberty" or "stigma" do not appear anywhere in the instant Complaint, any such incipient claim must fail, because plaintiff cannot show that he has been "precluded from employment in his chosen field." *Id.* at 181–82 ("Plaintiff must show that the government action has the effect of 'seriously affect[ing], if not destroy[ing],' a plaintiff's ability to pursue his chosen profession,' or 'substantially reduc[ing] the value of his human capital.'") (quoting *O'Donnell v. Barry*, 148 F.3d 1126, 1141 (D.C. Cir. 1998) (in turn quoting *Kartseva v. Department of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994)) (alterations in original)).

Plaintiff asserts in conclusory fashion that the defendants are "policymaking officials," Complaint ¶ 201, but plaintiff cannot succeed without proving that, as a matter of District law, the defendants are "responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986). *See also Triplett v. District of Columbia*, 108 F.3d 1450, 1454 (D.C. Cir. 1997) (noting that a final policymaker must be capable of more than "mere exercise of discretion") (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988)).

Plaintiff must demonstrate the District's "deliberate indifference towards [his] constitutional rights . . . ." *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (*quoting City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)). Deliberate indifference is determined objectively, "by analyzing whether the municipality knew or should have known of the risk of constitutional violations," and yet failed to respond as necessary. *Baker v. District of Columbia*, 326 F.3d 1302, 1307 (D.C. Cir. 2003). Moreover, if the government officials lack final policymaking authority, their mere exercise of discretion, not in service of any municipally established policy, is insufficient to render the District liable. *Triplett*, 108 F.3d at 1453 (quoting *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989)).

Plaintiff cannot meet this high burden, because he was not deprived of any rights. The individual defendants, as shown herein, were merely exercising their considerable discretion in evaluating the applications of candidates for appointment or reappointment as ALJs; there is no "municipally established policy" to deprive plaintiff of his constitutional rights.

For liability to attach to the District, plaintiff must provide specific and detailed evidence of a continuing policy or pattern of unconstitutional conduct that was either condoned or deliberately ignored by the District. *Daskalea*, 227 F.3d at 441–42; *Carter v. District of*

*Columbia*, 795 F.2d 116, 125–26 (D.C. Cir. 1986) (plaintiffs must prove "a persistent, pervasive practice, attributable to a course deliberately pursued by official policy-makers, one that caused the deprivation of constitutional rights plaintiffs [allegedly] experienced."). Evidence of a single incident is not sufficient to show the existence of a policy or pattern. *See Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988); *Byrd v. District of Columbia*, 297 F.Supp.2d 136, 139 (D.D.C. 2003) (plaintiff's evidence did not stand up to "the level of exacting proof demanded by . . . this Circuit . . . .").

Plaintiff cannot meet this difficult burden. *See Sanders v. District of Columbia*, 522 F.Supp.2d 83, 88 (D.D.C. 2007) (claims under § 1983 dismissed because plaintiff "failed to demonstrate that the District had a custom or policy of retaliating against employees for exercising the right to free speech under the First Amendment."); *id*. (plaintiff has not "pointed to any other employee who suffered similar retaliation. The policy or custom must be pervasive to support municipal liability") (citing *Carter*, 795 F.2d at 116).

Consequently, because the defendants sued individually did not engage in any tortious conduct (or are protected by immunity), plaintiff's claims under 42 U.S.C. § 1983 as against the District must be dismissed or, in the alternative, summary judgment on those claims should be granted to the District. *See, e.g., Powers-Bunce v. District of Columbia*, 479 F.Supp.2d 146, 157 (D.D.C. 2007) ("[T]here is no vicarious liability for constitutional violations.") (citing cases).

### E. Plaintiff Has Not Been Deprived of Equal Protection.

Plaintiff's equal-protection arguments are less than clear; plaintiff does not explicitly allege that he was "singled out" or "treated differently" than others without a rational basis.

Apparently, plaintiff alleges "unequal treatment" in the reappointment process, *see* Complaint ¶¶ 161–68, but does not provide any basis for comparison.

To survive an equal protection challenge, government action need only bear a rational relationship to a legitimate government interest, so long as no fundamental rights or suspect classifications are implicated. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439–40 (1985).

Plaintiff's equal-protection claim fails at the threshold. In a recent decision, the Supreme Court explicitly held that "class of one" equal protection claims are not cognizable in the context of public employment cases. *Engquist v. Oregon Dep't of Agriculture*, ___ U.S. ___, 128 S.Ct. 2146, 2151 (June 9, 2008).

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id*. at 2154.

So too here. The considerable discretion granted to the members of the Commission to determine the individualized qualifications of candidates for appointment (and reappointment) as ALJs, *see* SMF ¶¶ 5–6, makes plaintiff's equal-protection claims untenable as a matter of law. *Id*. at 2155 ("treating similarly situated individuals differently in the employment context is par for the course.").

Notwithstanding *Enquist*, equal protection "is essentially a direction that all persons similarly situated should be treated alike." *Cleburn*, 473 U.S. at 439. Plaintiff has clearly failed the initial hurdle in any equal protection claim—alleging that he has been treated differently than any

other similarly situated applicants. *See, e.g., 3883 Connecticut, LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) (two essential elements in a "class of one" equal protection claim: (1) disparate treatment of similarly situated parties, (2) without a rational basis) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff's equal protection claims must be dismissed.


### F. First Amendment/Retaliation

Plaintiff alleges that the District retaliated against him by declining to reappoint him on the basis of his "protected speech," and his prosecution of a lawsuit in the Superior Court. Complaint ¶¶ 183, 207.[15]

"[C]itizens choosing to enter public service 'must accept certain limitations on [their] freedom [of speech]." *Winder*, 511 F.Supp.2d at 171–72 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). To make out a claim for retaliation in violation of the First Amendment, plaintiff must meet a four-part test.

> First, the public employee must have spoken as a citizen on a matter of public concern. "Second, the court must consider whether the governmental interest in 'promoting the efficiency of the public services it performs through its employees' . . . outweighs the employee's interest, 'as a citizen, in commenting upon matters of public concern' . . . ." Third, the employee must show that her speech was "a substantial or motivating factor in prompting the retaliatory or punitive act." Finally, the employee must refute the government employer's showing, if made, that it would have reached the same decision in the absence of the protected speech. "The first two factors ... are questions of law for the court to resolve, while the latter are questions of fact ordinarily for the jury."

*Wilburn v. District of Columbia*, 480 F.3d 1140, 1149 (D.C. Cir. 2007) (citations omitted).

---

[15]     Claims under the WPA can be "so intertwined with" a First Amendment claim "that the disposition of one compels the same disposition of the other." *Johnson v. District of Columbia*, 935 A.2d 1113, 1116 (D.C. 2007).

Plaintiff cannot meet all the elements of this test.[16]

As a threshold matter, while plaintiff claims he testified before the Council "as a private citizen," Complaint ¶ 80, the cover sheet of plaintiff's written testimony explicitly identifies it as "Testimony of Roy L. Pearson, Jr Administrative Law Judge D.C. Office of Administrative Hearings." DEx. 6.

"Ordinarily, employees who make recommendations to their supervisors on subjects directly related to their jobs are carrying out their official duties and thus receive no First Amendment protection." *Thompson*, 530 F.3d at 916. This simple proposition dooms most of plaintiff's claims.

An ALJ's job duties include, *inter alia*, participation in OAH "management activities to set and steer policies relating to [OAH] operations." D.C. Code § 2-1831.09(a)(5). The vast majority of plaintiff's purported "protected disclosures" encompass his subjective beliefs as to the proper management and operations of OAH, including the June 2005 memorandum (DEx. 2), and hence are not protected by the First Amendment. *See Garcetti*, 547 U.S. at 414 (Court denied First Amendment protection, concluding that memorandum notifying supervisors of alleged inaccuracies in affidavit used to procure a search warrant was written pursuant to plaintiff's official duties).

Here, there can be no reasonable question that plaintiff would not have testified before the Council but for his position as an ALJ. Even if that testimony was not required as part of his routine job duties, plaintiff's First Amendment claim is unavailing. *See Williams v. Johnson*, 537 F.Supp.2d 141, 151 (D.D.C. 2008) ("an employee's speech may be pursuant to his or her official

job duties—and thus unprotected by the First Amendment—even where the particular duty at issue 'constitute[s] an unusual aspect of the plaintiff's employment.'") (quoting *Wilburn*, 480 F.3d at 1150); *Winder* 511 F.Supp.2d at 173 n.8 (speech was made "pursuant to" employment even when "not explicitly required as part of [the employee's] day-to-day job responsibilities.") (quoting *Green v. Bd. of County Comm'rs*, 472 F.3d 794, 799–800 (10th Cir. 2007)).

Thus, to the extent plaintiff's Council testimony was part of his official duties, defendant Butler's alleged direction that plaintiff not communicate with the Council without prior approval, Complaint ¶ 85, even if proven, would not be impermissible under the First Amendment. *See Garcetti*, 547 U.S. at 422–23 ("[e]mployers have heightened interests in controlling speech made by an employee in his or her professional capacity . . . [and] [s]upervisors must ensure that their employee's official communications are accurate, demonstrate sound judgment, and promote the employer's mission."). *See also Thompson*, 530 F.3d at 917 ("When employees make recommendations to supervisors on subjects directly related to their jobs, they are speaking as employees even if the supervisors discourage this speech.").

Plaintiff's criticisms about the management and operation of OAH were part of his official job duties, and are not protected here. *See Winder*, 511 F.Supp.2d at 174 ("such attempts to expose wrongdoing are not covered by the First Amendment where the speech is 'pursuant to' an official duty.") (citing *Wilburn*, 480 F.3d at 1150).

> [E]ven if plaintiff's speech was outside the bounds of his job description or assignments, his speech was as a government employee and related to his professional responsibilities, as opposed to his thoughts as a private citizen. Thus, because "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen," but "simply reflects the exercise of control

---

[16] The third element of the test is alternatively formulated as requiring that a plaintiff must establish a causal link between his speech and the disputed government actions against him. *See, e.g., Velikonja v. Gonzales*, 466 F.3d 122, 124 (D.C. Cir. 2006).

over what the employer itself has commissioned or created," [*Garcetti*, 547 U.S. at 422], plaintiff's reports to his superiors . . . are not protected by the First Amendment. Accordingly, plaintiff's complaint does not state a claim pursuant to the First Amendment, and, therefore, must be dismissed.

*Thompson v. District of Columbia*, 478 F.Supp.2d 5, 9 (D.D.C. 2007), *affirmed in relevant part*, 530 F.3d 914 (D.C. Cir. 2008).

Consequently, notwithstanding the lack of any competent evidence that the District "punished" plaintiff in any way for these disclosures, plaintiff's First Amendment claims must be dismissed. *See Thompson*, 530 F.3d at 918 (plaintiff's "complaints to [agency] officials about corruption were clearly made pursuant to his official job duties and thus the District of Columbia did not violate his First Amendment rights by sanctioning him for his speech.").

Moreover, it is doubtful that plaintiff's comments here were "matters of public concern." *See Williams*, 537 F.Supp.2d at 152 ("an individual personnel dispute does not generally constitute a matter of public concern.") (quoting *Tao v. Freeh*, 27 F.3d 635, 639–40 (D.C. Cir. 1994) (citing *Connick v. Myers*, 461 U.S. 138, 148 (1983)). And while the Commission's final decision explicitly declined to reach the issue of plaintiff's manner of prosecution of a private lawsuit, *see* DEx. 15 at n.2, persuasive case law suggests that even if it had, that suit would not be a matter of "public concern." *See Rendish v. City of Tacoma*, 123 F.3d 1216, 1221 (9th Cir. 1997) (to be protected under the First Amendment, a public employee's suit "must involve a matter of public concern."); *Zorzi v. County of Putnam*, 30 F.3d 885, 896 (7th Cir. 1994) ("If a public employee is retaliated against for filing a lawsuit, the public employee has no First Amendment claim unless the lawsuit involves a matter of public concern.").

Notwithstanding the above, plaintiff cannot demonstrate the "causation" element of his First Amendment retaliation or WPA claims. A plaintiff can establish causation by showing that his supervisors had knowledge of his protected speech, and that the retaliatory action "took place

shortly after that activity." *Davis v. District of Columbia*, 503 F.Supp.2d 104, 125 (D.D.C. 2007) (quoting *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2001)).[17] However, the "temporal proximity" between the protected speech and the adverse action must be "very close." *Id.* (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a three or four month period is insufficient to establish causation)).

Here, plaintiff alleges that his first protected disclosure occurred in June of 2005, but the chief act of "retaliation" of which he complains—the Commission's unanimous decision not to reappoint him—occurred in October of 2007. Complaint ¶ 177. *See Johnson*, 935 A.2d at 1120 ("a stretch of four months realistically cannot constitute temporal proximity in the ordinary sense of that phrase.").

The District had manifold, legitimate reasons for declining to reappoint plaintiff, which were exhaustively detailed. *Cf.* DEx. 13, 15. Plaintiff cannot demonstrate that these reasons were a "pretext" for the Commission's actions. *See, e.g., Ginger v. District of Columbia*, 527 F.3d 1340, 1344 (D.C. Cir. 2008) (explaining "burden-shifting" approach applied to retaliation claims) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)).

If the employer can provide legitimate reasons for the employment action, plaintiff must show that those reasons were not the employer's "true reasons, but were a pretext for discrimination." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (*per curiam*) (citing

---

[17]     There is evidence suggesting that plaintiff, in making his first "protected disclosure" just one month after his appointment, had his future burden in mind. *See* DEx. 13 at 3 n.5 (another ALJ told the Commission that plaintiff, shortly after joining OAH, "expressed concern that [he] would not be reappointed," the ALJ told plaintiff that his conduct and interactions were "creating a 'self-fulfilling prophesy,'" and plaintiff was "already building a record which [he] felt would be useful in ensuring that [he was] reappointed to a full ten year term.").

*Burdine*, 450 U.S. at 252–53 (plaintiff must show that an illegal reason "more than likely motivated the employer" or that the proffered explanation "is unworthy of credence.").

Plaintiff cannot show that he was denied reappointment *because of* his purported "protected" speech. *See Wiley*, 511 F.3d at 157 ("Even though [plaintiff] may have suffered an adverse employment action, this, without more, is not proof of illegal discrimination or retaliation."). Plaintiff's assertions that his reappointment was denied in retaliation for his alleged protected speech must be rejected. *See Ginger*, 527 F.3d at 1347 (affirming trial court's dismissal of retaliation allegations as "conclusory, vague, and for the most part unsubstantiated.") (citing *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Because [the plaintiff's] claim of retaliation rests entirely upon a conclusory representation, the district court was right to dismiss it.").

### G. Whistleblower

The WPA provides that "[a] supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order." D.C. Official Code § 1-615.53. The WPA defines "protected disclosure" as

> [A]ny disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee reasonably believes evidences:
>
> (A) Gross mismanagement;
>
> (B) Gross misuse or waste of public resources or funds;
>
> (C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;

(D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or

(E) A substantial and specific danger to the public health and safety.

*Id*. § 1-615.52(a)(6).

Plaintiff alleges that the defendants violated the WPA in a number of ways; plaintiff alleges that defendant Butler violated the WPA (and the OAH Act) when he "rescinded" his previous, favorable recommendation for reappointment. Complaint ¶ 260. Plaintiff also alleges that the members of the Commission violated the WPA when they failed to reappoint him by the "statutory deadline" in the OAH Act; when they issued the August 7, 2007, notice of possible denial of reappointment; and when they voted to deny plaintiff's reappointment. *Id*. ¶¶ 261–263.[18]

Plaintiff asserts that a number of his communications were "protected disclosures" as defined by the WPA. To whit: (1) plaintiff's 19-page memorandum in June of 2005 to defendant Butler and the other ALJs at the OAH (Complaint ¶ 74); (2) plaintiff's July 2005 letter to the Commission (Complaint ¶ 77); (3) plaintiff's February, 2006, testimony before the D.C. Council (Complaint ¶ 80); (4) plaintiff's letter to the Mayor in July of 2005 regarding defendant Butler and "morale" at the OAH (Complaint ¶ 89); (5) plaintiff's March 9, 2007, e-mail to defendant Butler and the other ALJs at the OAH (Complaint ¶¶ 127–128).

---

[18]     Plaintiff's assertions of violations of "statutory deadlines" must fail. *See Langer v. Dep't of Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001) ("disclosures of trivial violations do not constitute protected disclosures.") (citing *Herman v. DOJ*, 193 F.3d 1375, 1381 (Fed. Cir. 1999) (aim of whistleblower statutes is to encourage the reporting of a "genuine violation of the law" rather than "minor or inadvertent miscues occurring in the conscientious carrying out of [an official's] assigned duties.")).

Preliminarily, it is well-established that "the WPA does not create a private right of action against individual supervisors." *Williams*, 537 F.Supp.2d at 148 (citing *Winder v. Erste*, 2005 WL 736639 (D.D.C. 2005) and *Tabb v. District of Columbia*, 477 F.Supp.2d 185, 189 (D.D.C. 2007)). *See also Wilburn v. District of Columbia*, ___ A.2d ___, 2008 WL 4499979 (D.C. Oct. 9, 2008), *slip op*. at 13 n.9 (same). Consequently, plaintiff's WPA claims against the individual defendants, even assuming they were "supervisors" here, must be dismissed.[19]

The standard for liability in WPA cases is the same as that applied under the "burden-shifting" approach used in federal discrimination cases. *Johnson v. District of Columbia*, 935 A.2d 1113, 1118 (D.C. 2007) (citing *Crawford*, at 221). In other words, a plaintiff makes a *prima facie* case under the WPA by showing that the protected disclosure was a "contributing factor" in the adverse action, but liability may not be imposed without a finding of "but for" causation. *Wilburn*, *slip op*. at 2 n.3 (citing *Johnson*, 935 A.2d at 1115). *See also Davis*, 503 F.Supp.2d at 128 (if plaintiff makes out a *prima facie* case under the WPA, burden shifts to defendant to show that adverse personnel action would have occurred for "legitimate, independent reasons" even if there had been no protected activity, and a "direct causal link" must be demonstrated) (citing *Crawford v. District of Columbia*, 891 A.2d 216, 219 (D.C. 2006)).[20]

Plaintiff cannot meet his burden. A protected disclosure must be one that the employee reasonably believes reveals "such serious errors by the agency that a conclusion the agency erred

---

[19]    *See also Willis v. Dep't of Agriculture*, 141 F.3d 1139, 1143 (Fed. Cir. 1998) ("[c]riticism directed to the wrongdoers themselves is not normally viewable as whistleblowing.") (quoting *Horton v. Dep't of Navy*, 66 F.3d 279, 282 (Fed. Cir. 1995)).

[20]    The D.C. Court of Appeals has recognized that case law interpreting the federal whistleblower statute, 5 U.S.C. § 2302(b)(8), "is instructive in interpreting similar state statutes" such as the WPA. *Id.* (quoting *Crawford*, 891 A.2d at 221 n.12 (discerning no evidence "that the D.C. Council intended to apply a different liability standard in its whistleblower cases than that applied in all other federal and state whistleblower laws . . .").

is not debatable among reasonable people." *Wilburn*, *slip op.* at 10 (quoting *White v. Dep't of the Air Force*, 391 F.3d 1377, 1382 (Fed. Cir. 2004)). *See also Williams v. Johnson*, 537 F.Supp.2d 141, 156 (D.D.C. 2008) ("The 'proper test' to determine whether an employee's belief is "reasonable" under the WPA is: '[c]ould a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence [one of the delineated issues].'") (quoting *Zirkle v. District of Columbia*, 830 A.2d 1250, 1259–60 (D.C. 2003) (quoting *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999)).[21]

Plaintiff's "disclosures" here do not meet this threshold.

While plaintiff asserts that his disclosures revealed alleged violations of various laws, regulations, and codes, *see*, *e.g.*, Complaint ¶ 74, both the Council and the Mayor declined to act on plaintiff's allegations. Any objective examination of the purported "violations" will show that that was the proper result. "Mere differences of opinion between an employee and his agency superiors as to the proper approach to a particular problem or the most appropriate course of action do not rise to the level of gross mismanagement." *White*, 391 F.3d at 1381.

Plaintiff's asserted basis for his very first "protected disclosure," in June of 2005, *see* DEx. 2, and the crux of all of his subsequent disclosures, was his belief that OAH's "peer-review" process interfered with the "independence" of ALJs. Complaint ¶ 74. Put simply, plaintiff's argument, whatever its philosophical worth, is incorrect as a matter of law—ALJs are

---

[21]   Additionally, despite plaintiff's current incendiary rhetoric, the nature of the protected disclosures must be based on the contents of those disclosures, "not his subsequent characterization of those statements" in litigation. *Wilburn*, *supra*, at 10 (quoting *Ward v. Merit Sys. Prot. Bd.*, 981 F.2d 521, 527 (Fed. Cir. 1992)).

not "independent" like judges in the judicial branches of government, but function under the control and authority of the executive branch.

ALJs are creatures of statute, and their roles were created to assist the executive branch in administrative decisionmaking and rulemaking. *See, e.g., Nash v. Bowen*, 869 F.2d 675, 680 (2nd Cir. 1989) ("An ALJ is a creature of statute and, as such, is subordinate to the [agency head] in matters of policy and interpretation of law."). *See also CropLife America v. EPA*, 329 F.3d 876, 882 (D.C. Cir. 2003) ("It is commonly recognized that ALJs are entirely subject to the agency on matters of law.") (quoting *Iran Air v. Kugelman*, 996 F.2d 1253, 1260 (D.C. Cir. 1993)); *Simons*, 643 F.2d at 778 (agency employees who participate in "administrative adjudicatory process" are members of the executive branch); *Goodman v. Svahn*, 614 F.Supp. 726, 728 (D.D.C. 1985) ("[T]o the extent a larger right of decisional independence exists, arising either from the Due Process Clause of the Fifth Amendment or the APA or Social Security Act, such a right would belong to the claimants whose rights are adjudicated by the ALJs, *rather than to the ALJs themselves*") (emphasis added); *Ass'n of Admin. Law Judges, Inc. v. Heckler*, 594 F.Supp. 1132, 1141 (D.D.C. 1984) ("On matters of law and policy . . . ALJs are entirely subject to the agency . . . . Although an ALJ may dispute the validity of agency policy, the agency may impose its policy [over the ALJ]." (citations omitted)); *Ramos v. District of Columbia Dept. of Consumer and Regulatory Affairs*, 601 A.2d 1069, 1073 (D.C. 1992) ("In contrast with judicial tribunals, however, administrative law tribunals—created by the legislature to serve dispute resolution and rulemaking-by-order functions within agencies of the executive branch—by definition and design do not have the inherent "equitable authority" that courts in the judicial branch have derived from common law traditions and powers.").

No reasonable person could continue to debate the point that *local* ALJs (as compared to federal ALJs) should have the *same* independence from legislative and executive control that Article III judges possess. The OAH's peer-review system here is utterly uncontroversial, no matter how vehemently plaintiff dislikes it. *See Nash*, 869 F.2d at 680 ("Policies designed to insure a reasonable degree of uniformity among ALJ decisions are not only within the bounds of legitimate agency supervision but are to be encouraged.").

The Council received and considered plaintiff's testimony, and declined to materially alter the operations of the OAH. *See* Complaint ¶ 81 (peer-review system only "cosmetically changed").

Plaintiff's first alleged protected disclosure, in June of 2005, is based on his belief that OAH's "peer-review system" violated the OAH Code of Ethics, the D.C. Administrative Procedure Act, and the OAH Establishment Act. *See* DEx. 2; SMF ¶ 9. But plaintiff noted, on the very first page of that disclosure, that the disputed system was adopted some *four years earlier*. DEx. 2.

Case law is crystal clear that "[a] disclosure of information that is publicly known is not a disclosure under the WPA." *Meuwissen v. Dep't of Interior*, 234 F.3d 9, 13 (Fed. Cir. 2000). It strains credulity to suggest that an operational policy that had been in place and working for years (and is currently operational) was "discovered" by plaintiff to be a violation of District law. Plaintiff "revealed" nothing new.

Consequently, plaintiff's disclosures, no matter how they are subsequently characterized, cannot be considered revealing such "serious errors" that the matters are "not debatable." *See White*, 391 F.3d at 1383–84 (finding that plaintiff failed to meet his burden in whistleblower

claim of demonstrating "a consensus of criticism" or "broad agreement" that the challenged policy "was erroneous beyond mistake.").

Here, plaintiff's allegations are insufficient as a matter of law to show violations of the WPA.

"A purely subjective perspective of an employee is not sufficient even if shared by other employees. The WPA is not a weapon in arguments over policy or a shield for insubordinate conduct." *Zirkle*, 830 A.2d at 1260.[22] All of plaintiff's "protected disclosures" here were his purely subjective beliefs in how the OAH should be operated.

Moreover, it is insufficient for a plaintiff to merely allege "illegal" activity; he must demonstrate that the activity "contradicts" language in a law or regulation. *Zirkle*, 830 A.2d at 1259–60. Here, the OAH Act and its attendant regulations grant broad discretion to defendant Butler and the District to establish, and subsequently adjust, the operational requirements of that agency. *Cf.* D.C. Official Code §§ 2-1831.06(b), 2-1831.11(b); 6 DCMR §§ 3703.7, 3703.9, 3705.16, 3705.19; SMF ¶¶ 3–6. In light of that discretion, someone with plaintiff's "background and expertise" could not reasonably believe that the defendants' actions were illegal. *Id.* (citing *Haley v. Dep't of the Treasury*, 977 F.2d 553, 557 (Fed. Cir. 1992)).

Plaintiff's disagreement with his superiors about the proper policies and operation of the OAH simply do not rise to the level of disclosures protected by the WPA. Plaintiff's WPA claims must be dismissed.

---

[22]    *See also id.* (plaintiff's "belief was not that of an objectively reasonable person, 'but rather that of a rigid partisan whose beliefs and conduct were being challenged by his superiors.'").

*H. Plaintiff Cannot Prove Intentional Infliction of Emotional Distress.*

To prevail on the tort of intentional infliction of emotional distress in the District of Columbia, a plaintiff must show that the defendant "(1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused him severe emotional distress." *Gregg v. Hay-Adams Hotel*, 942 F.Supp. 1, 10 (D.D.C.1996)).

"[C]ourts in this jurisdiction are especially skeptical of intentional infliction of emotional distress claims in employment cases." *Anderson v. Ramsey*, 2006 WL 1030155, *8 (D.D.C. 2006) (even accepting allegations as true, plaintiff's claim fails as a matter of law) (citing *Kerrigan v. Britches of Georgetown, Inc.*, 705 A.2d. 624, 628 (D.C. 1997) ("employer-employee conflicts" do not generally "rise to the level of outrageous conduct")). The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Jackson v. District of Columbia*, 541 F.Supp.2d 334, 344 (D.D.C. 2008) (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)).

Plaintiff's IIED claim here must be dismissed. *Id.* ("Nothing in these facts even approaches the requisite standard of 'outrageousness.' It cannot be said that the [defendants' treatment of] plaintiff was 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'") (quoting *Bernstein*, 649 A.2d at 1075).

*I. Plaintiff Cannot Qualify for Punitive Damages Against the Defendants.*

The Supreme Court has held that punitive damages may not, as a matter of law, be awarded against municipalities under § 1983. *City of Newport v. Fact Concerts*, 453 U.S. 247, 267 (1981).

Punitive damages may be available in a § 1983 action against individual defendants when a defendant's conduct is shown to be a result of "evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

The defendants assert that in the instant case, plaintiff can prove no set of facts to support the imposition of punitive damages against the individual defendants. Even if a tort can be proven, plaintiff will not be able to demonstrate that the defendants here possessed the necessary state of mind according to *Butera v. District of Columbia*, 235 F.3d 637 (2001). The punitive damages claims against the individual defendants must be dismissed. *See, e.g., Pitt v. District of Columbia*, 491 F.3d 494, 507–508 (D.C. Cir. 2007) (under District law, "[p]unitive damages are warranted only when the defendant commits a tortious act accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's right, or other circumstances tending to aggravate the injury.") (quoting *Butera*, 235 F.3d at 657).

## IV. Conclusion

The defendants' actions here did not violate any of the fundamental principles of the Constitution or of local law. For the foregoing reasons, the defendants move to dismiss the Complaint or, in the alternative, for summary judgment.

DATE: October 24, 2008          Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

_____/s/ Ellen A. Efros_____
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431


_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov