UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| ROY L. PEARSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.08-00758 (ESH) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## REPLY

Pursuant to LCvR 7(d), defendants (collectively, "the District") hereby reply to plaintiff's Opposition to Defendants' Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment.

### A. Introduction and Summary of Argument

Plaintiff's opposition fails to meet the threshold standard in opposing summary judgment. Plaintiff has failed to present any affirmative evidence aside from his *own* declarations (neither of which is sufficient to avoid summary judgment), instead simply disputing the adequacy of the defendants' showing.[1] Plaintiff has failed to isolate *any* disputed material fact precluding summary judgment to the defendants.

Plaintiff's opposition continues his preference for quantity over quality, as it is laden with unhelpful string cites and block quotations, with minimal legal analysis.[2] The opposition is rife

---

[1]    Although captioned "Affidavit," plaintiff's submitted documents are not notarized and hence are properly characterized as declarations. *See* 28 U.S.C. § 1746.

[2]    Emblematic of plaintiff's confusion is his characterization of the defendants' dispositive defenses as "specious claims" or "unsupported claims."

with hyperbole and histrionics, regurgitating a lengthy recitation of plaintiff's allegations regarding his protected disclosures, but falling far short of setting forth any non-speculative facts that preclude summary judgment to the District.

Plaintiff objects that the defendants' dispositive motion is based solely on "unidentified and unauthenticated documents." P.Opp. at 2.[3] The objection is specious because plaintiff never pinpoints *any* specific documents he claims to be unidentified or unauthenticated.[4] All of the documents are part of the record here and it would be, at the very least, monumentally inefficient for the Court to wait to consider these documents until after plaintiff has had a chance to engage in pointless discovery. Plaintiff is incorrect as a matter of law but, out of an abundance of caution, the defendants demonstrate herein that each of the proffered documents are admissible and support a finding of summary judgment for the defendants.

Even worse, plaintiff relies on the *same* evidence he challenges to attempt to stave off summary judgment. *See, e.g.*, P.Opp. at 18 & n.7.

## B. Argument

*1. Plaintiff Failed to Meet His Burden in Response to the District's Dispositive Motion.*

It is generally true that a plaintiff, to survive a motion to dismiss, must allege a "plausible entitlement to relief" by setting forth "any set of facts consistent with the allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). However, where, as here, a plaintiff

---

[3]     Similarly, plaintiff generates a worthy oxymoron when he states that the defendants' dispositive motion relies on "factually unsupported legal arguments . . . ." *Id*. at 42.

[4]     Indeed, footnote 22 of the Opposition appears to indicate that plaintiff, despite the five full months he had, did not even looked at all of the defendants' exhibits, although he should—given his allegations—be intimately familiar with them.

includes detailed factual allegations in his complaint, he can "plead himself out of court by alleging facts that render success on the merits impossible." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000) (citing *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998)).

That is exactly what has occurred here—the profuse verbiage supplied by plaintiff at every stage has only clarified the District's showing that he cannot succeed on the merits.

Plaintiff has utterly failed to meet his burden—to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). *See also Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir. 1993) (on summary judgment, non-movant, having the burden at trial, must respond with a showing of "affirmative evidence.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

To survive summary judgment, a party must "produce evidence . . . capable of being converted into admissible evidence." *Greer*, 505 F.3d at 1315 (quoting *Gleklen v. Democratic Congressional Campaign Comm.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)).

Plaintiff's own declarations do not contain a *single* citation to any record evidence (except to the District's exhibits, which plaintiff claims are not evidence). As such, the declarations, "unsupported by citations to accurate record evidence[,] are insufficient to create issues of material fact." *Hinson v. Merritt Educational Center*, 579 F.Supp.2d 89, 92 (D.D.C. 2008). *See also Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F.Supp.2d 1, 28 n.11 (D.D.C. 2006) (affidavits "are entirely conclusory, supported by no evidence in the record; as such, they fall under the kind of affidavit typically insufficient to avoid summary judgment.").

Under well-established decisional law, plaintiff's declarations are inadequate to avoid summary judgment. *Hinson*, 579 F.Supp.2d at 102 n.5 ("Plaintiff's own unsubstantiated beliefs amount to nothing more than hearsay, self-serving statements and speculation, and are insufficient as such to defeat summary judgment.") (citations omitted). Moreover, the "Affidavit of Roy L. Pearson, Jr." dated April 6, 2009, is rife with "sheer hearsay" which "'counts for nothing' on summary judgment." *Greer*, 505 F.3d at 1315 (quoting *Gleklen*, 199 F.3d at 1369).[5]

"Summary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements." *Bonieskie v. Mukasey*, 540 F.Supp.2d 190, 195 (D.D.C. 2008). So too here—plaintiff's only "evidence" in support of his claims is his own conclusory assertions. Summary judgment is therefore appropriate for the defendants. "'[A] mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment.'" *Ginger v. District of Columbia*, 527 F.3d 1340, 1347 (D.C. Cir. 2008) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)). *See also Scott v. Harris*, 550 U.S. 372, 379 (2007) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' ") (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

Despite plaintiff's failure to present any evidence short of his own, conclusory assertions, he chides the District for submitting "unidentified and unauthenticated documents." P.Opp. at 2.

---

[5]     For instance, plaintiff claims that a statement by another ALJ "contradicts what [she] said to me. I doubt she would have made the statement attributed to her if I were present." *Id*. ¶ 10. The record shows otherwise. *See* Defendants' Exhibit No. ("DEx.") 12 at 30 ("Please do something about [this] person. I am sick of this. I asked that Mr. Pearson not send me these nasty, derogatory, inflammatory statements. This goes beyond unprofessional conduct. This type of conduct is distracting and intolerable."); *id*. at 32 ("I have refrained and will continue to refrain from responding to your e-mails because I find your approach to raising issues (regardless of whether they merit our attention) to be quite confrontational, demeaning and not in the collegial manner that we, in OAH, have worked to establish.").

Notwithstanding plaintiff's concession that the ALJs communicated "almost exclusively" with each other via e-mail or memos, "Affidavit of Roy L. Pearson, Jr." dated April 6, 2009, at ¶ 6, and the reams of documentation submitted during the reappointment process, plaintiff fails to proffer a *single* page of any such evidence in support of his claim. Such failure dooms his opposition.

Plaintiff argues that it is "inappropriate" and "premature" for the District to seek summary judgment before he has had the opportunity for discovery. P.Opp. at 47. Plaintiff is wrong as a matter of law.

Although plaintiff claims that he needs discovery to prove his claims, *see* plaintiff's "Fed.R.Civ.Proced. 56(c) Affidavit," ¶¶ 2, 8–9, he never requests it in a motion, nor expressly claims a need for it to oppose the District's motion. The Court should reject plaintiff's claim. *See Dunning v. Quander*, 508 F.3d 8, 9 (D.C. Cir. 2007) (affirming trial court's denial of Rule 56(f) motion because plaintiff had failed to "state with sufficient particularity why he could not, absent discovery, present by affidavit facts essential to justify his opposition.") (quoting *Dunning v. Quander*, 468 F.Supp.2d 23, 28 n.5 (D.D.C. 2006)).

As shown in the District's filings and herein, "plaintiff would be unable to prevail as a matter of law regardless of what discovery might reveal." *Id.*

Similarly, plaintiff does not seriously dispute any of the District's material facts, and his "Statement of Material Facts as to Which a Genuine Dispute Exists" violates LCvR 56.1, and is, most importantly, insufficient to avoid summary judgment. *See Jackson v. Finnegan, Henderson*, 101 F.3d 145, 148 (D.C. Cir. 1996) (Circuit requires "strict compliance" with LCvR 56.1; affirming trial court's striking of plaintiff's opposing statement of genuine disputed issues, which

was "[r]eplete with factual allegations not material to [plaintiff's] claims and repeatedly blending

factual assertions with legal argument").

LCvR 56.1 requires, in response to a motion for summary judgment, "a concise statement

of genuine issues setting forth all material facts as to which it is contended there exists a genuine

issue necessary to be litigated." Plaintiff never submitted any such "statement" at all; his

"Statement" is merely a response to the District's statement, and utterly fails to set forth *any*

"disputed material facts worthy of resolution at trial." *Jackson*, 101 F.3d at 149.


*2. The Individual Defendants are Entitled to Immunity.*

Plaintiff fails to demonstrate that the individual defendants are not entitled to immunity,

making conclusory arguments, and ignoring the primary purpose of immunity—to protect

government officials from the burdens of meritless litigation.

> Immunity from damages in a civil suit entails immunity from the entire *process* of
> litigation: lengthy (and costly) pre-trial discovery, depositions, and ultimately trial
> itself, as well as any damages. Taken together, those obligations amount to a
> significant burden on a government official and all of those costs will have been
> incurred for no reason in the event that the defendant is ultimately found to enjoy
> immunity.

*Committee on the Judiciary v. Miers*, 575 F.Supp.2d 201, 205 (D.D.C. 2008) (emphasis in

original) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (discussing the potential negative

consequences of litigation against governmental officials, including "the general costs of

subjecting officials to the risks of trial—distraction of officials from their governmental duties,

inhibition of discretionary action, and deterrence of able people from public service.").

No individual defendant here knowingly violated plaintiff's First Amendment rights. As

discussed more fully below, plaintiff's speech was made in the course of his duties, and not as a

private citizen. Plaintiff's communications thus enjoy no First Amendment protection. The

Commission on Selection and Tenure of Administrative Law Judges of the Office of Administrative Hearings ("Commission") was clearly entitled to take such communications into account as part of the broad discretion granted it to make reappointment decisions, notwithstanding plaintiff's failure to show that his speech was a substantial or motivating factor in the Commission's decision.

Plaintiff makes the conclusory argument that it has been "clearly established" for "decades" that the government is "prohibited from retaliating against" an employee's exercise of First Amendment rights. P.Opp. at 55. Such a superficial argument ignores controlling precedent that states that defining the legal right at issue at such a broad "level of generality" would completely vitiate the qualified immunity defense. *See, e.g., International Action Center v. United States*, 365 F.3d 20, 25 (D.C. Cir. 2004) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.").

*3. Plaintiff Cannot Succeed on His First Amendment Claim.*

The Commission declined to reappoint plaintiff for a variety of reasons, *see* DEx. 13; DEx. 15, *not* because of any protected "speech" he made. But even if plaintiff could show that that speech was the *sole* reason behind the Commission's decision, plaintiff's non-renewal did not violate the First Amendment.

**a. Plaintiff's Speech Was Not a Matter of Public Concern.**

Plaintiff did not set forth sufficient facts to establish that he was speaking as a private citizen on matters of public concern. Thus, he is not entitled to the full protection of the First

Amendment. Plaintiff does not dispute the District's primary point—that he would not have made *any* of his communications but for his government employment. Plaintiff does not discuss—much less distinguish—the District's showing that plaintiff's speech was not a matter of public concern, but primarily his personal criticisms of how the Office of Administrative Hearings ("OAH") was run, and his complaints about that agency's management and policies. *Williams v. Johnson*, 537 F.Supp.2d 141, 152 (D.D.C. 2008) ("an individual personnel dispute does not generally constitute a matter of public concern.") (quoting *Tao v. Freeh*, 27 F.3d 635, 639–40 (D.C. Cir. 1994) (citing *Connick v. Myers*, 461 U.S. 138, 148 (1983)).

Indeed, the bulk of plaintiff's asserted "protected disclosures" were his attacks on the head of the agency, Chief ALJ defendant Butler. *See, e.g.*, Amended Complaint ¶¶ 76–79, 98–99, 108–13, 148, 152; P.Opp. at 16, 31, 33, 57–58; SMF ¶ 11; DEx. 4. Such speech is not a matter of public concern. *See Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 780–81 (2nd Cir. 1999) (rejecting claim that speech impugning hospital director's skills as a doctor, teacher, and administrator was a matter of public concern) ("Our review of her prolific writing convinces us that [plaintiff] was not on a mission to protect the public welfare. [T]he district court correctly reasoned that the mere fact that one or two of [her] comments could be construed broadly to implicate matters of public concern, does not alter the general nature of her statements.").

Even if, however, plaintiff can demonstrate that his purported protected disclosures were matters of public concern, he does not meet the other elements necessary to make out a First Amendment retaliation claim. *Wilburn v. District of Columbia*, 480 F.3d 1140 (D.C. Cir. 2007).

**b. The District's Interests Outweigh Plaintiff's.**

Specifically, to the extent plaintiff's communications were First Amendment "speech" at all which was a "substantial motivation" behind the defendants' actions, he has failed to show that "the governmental interest in 'promoting the efficiency of the public services it performs through its employees' . . . outweighs the employee's interest, 'as a citizen, in commenting upon matters of public concern' . . . ." *Id.* at 1149 (quoting, *inter alia, Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Plaintiff contends baldly that, regarding the government's interest, "there is no trade off; no countervailing interests, that have to be weighed and balanced." P.Opp. at 13. If plaintiff's odd theory were correct, there would never be any need to perform any balancing at all, as *every* plaintiff asserting First Amendment claims believes that their own disclosures "enhanced" the efficiency of government operations. *Id.*

In performing this "balancing" test, the District's interest here clearly outweighs plaintiff's, because the Court can easily find that plaintiff's purported speech "impair[ed] discipline by superiors or harmony among co-workers, ha[d] a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impede[d] the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).[6]

There can be little doubt that plaintiff's speech, regardless of whether it underlay the defendants' actions, "interfered with the efficient functioning" of the OAH and "discredited the

---

[6]     In striking this balance, the Supreme Court has concluded that "[t]he government's interest in achieving its goals as effectively and efficiently as possible is *elevated* from a relatively subordinate interest when it acts as sovereign to a *significant one* when it acts as employer." *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 676 (1996) (emphasis added) (quoting *Waters v. Churchill*, 511 U.S. 661, 675 (1994) (plurality opinion)).

office by [being heard] . . . in public." *AFGE v. Loy*, 332 F.Supp.2d 218, 228–29 (D.D.C. 2004)

(alterations in original) (quoting *American Postal Workers Union, AFL-CIO v. USPS*, 830 F.2d

294, 300 (D.C. Cir. 1987) (quoting *Rankin*, 483 U.S. at 384)).[7]

### c. Plaintiff Fails to Demonstrate Causation.

In First Amendment retaliation cases, Supreme Court precedent requires "attentive

application of the [*Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977)] requirement of

proof of causation and substantial deference, as mandated by *Pickering, Connick,* and *Waters*, to

the government's reasonable view of its legitimate interests . . . ." *Umbehr*, 518 U.S. at 678.

Plaintiff fails to meet his burden under this threshold, because he cannot show causation.

Plaintiff makes the bold conclusory assertion that "[a] clearer allegation of a causal

connection between plaintiff's exercise of his right to free speech and his right to petition the

government, and the defendants' retaliatory conduct, is difficult to imagine." P.Opp. at 19. The

District is compelled to disagree. Plaintiff obviously anticipated filing this lawsuit, perhaps even

during the application process, as his first "protected disclosure" occurred just one month after

he was hired. Amended Complaint ¶ 95. Plaintiff uses that allegation to indulge in the classic

---

[7]         *See also Arnett v. Kennedy*, 416 U.S. 134, 168 (1974):

> [T]he Government, as an employer, must have wide discretion and control over
> the management of its personnel and internal affairs. This includes the prerogative
> to remove employees whose conduct hinders efficient operation and to do so with
> dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee
> can adversely affect discipline and morale in the work place, foster disharmony,
> and ultimately impair the efficiency of an office or agency.

*Id. See also* n.5, *supra*.

logical fallacy of *post hoc ergo propter hoc*, assuming that because his non-renewal occurred *after* his "speech," that speech *caused* the decision not to renew his appointment.[8]

Even if plaintiff's final "protected disclosure" occurred in March of 2007, *see* Amended Complaint ¶ 151–52, that fact—alone—is insufficient as a matter of law to demonstrate that that disclosure *caused* the Committee to decline to reappoint him, by a decision dated some seven months later. *See, e.g., Farris v. Clinton*, ___ F.Supp.2d ___, 2009 WL 635621 (D.D.C. Mar. 12, 2009) (to give rise to a reasonable inference of causality, the temporal proximity must be "'very close,' *i.e.*, closer than three or four months.") (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Allegations of government misconduct are "'easy to allege and hard to disprove.'" *National Archives and Records Admin. v. Favish*, 541 U.S. 157, 175 (2004) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998)). Consequently, not only must a § 1983 plaintiff "prove a chain of causation from animus to injury," she must show "but-for causation, without which the adverse action would not have been taken . . . ." *Hartman v. Moore*, 547 U.S. 250, 259, 260 (2006). Plaintiff fails to make this showing; even if there is some evidence of "animus" here, plaintiff cannot succeed, because abundant evidence demonstrates that plaintiff would not have been reappointed regardless of his "speech."

> If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind. It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.

*Id*. at 260 (citations omitted).

---

[8]     *See, e.g.*, Irving M. Copi & Carl Cohen, *Introduction to Logic* at 101 (8th ed. 1990).

### d. Plaintiff was not protected by the First Amendment.

The Supreme Court, in *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980), determined that certain employees could be dismissed on the basis of their political affiliation, notwithstanding the First Amendment, based on the government's interests under a balancing test. *Hall v. Ford*, 856 F.2d 255, 261–262 (D.C. Cir. 1988). The Supreme Court found that such "political" terminations were permissible for certain high-level employees who were "policymakers." *Id*. at 262. "Among the relevant indicia of policymaking authority are . . . broad responsibilities, relative pay, technical competence, . . . public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders." *Id*. (quoting *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 2442 (1st Cir. 1986) (*en banc*), *cert. denied*, 481 U.S. 1014 (1987)).

Local ALJs satisfy many of these indicia—they are paid much better than the average District employee, have broad responsibilities and technical competence, and have considerable influence on the operations of agency programs under which they decide cases.

Federal courts around the country have applied the "*Elrod-Branti* exception" to judicial or quasi-judicial officers like ALJs, and found that those employees are policymakers that may be terminated based on their speech. *See Newman v. Voinovich*, 986 F.2d 159, 163 (6th Cir. 1993) (judges are policymakers because the office "involves making on the state's behalf the sort of decisions about which there are political debates."); *Kurowski v. Krajewski*, 848 F.2d 767, 770 (7th Cir. 1988) (same) ("A judge both makes and implements governmental policy. A judge may be suspicious of the police or sympathetic to them, stern or lenient in sentencing, and political debates rage about such questions."); *Levine v. McCabe*, 2007 WL 4441226 at * 7–8 (E.D.N.Y. 2007) (same) (judicial hearing officers are not protected by civil service law but are appointed to

a renewable, time-limited term, have special expertise, and have the powers of a court in performing a like function); *Carroll v. City of Phoenix*, 2007 WL 1140400 at * 11–12 (D.Ariz. 2007) (dismissing terminated municipal judge's First Amendment retaliation claim when city council declined to reappoint him; "the public tends to perceive judges of all kinds as policymakers who shape the law . . . [A]s appointees [the judges] operate as agents of the city government. By applying local law . . . they give voice to the policies of the elected officials who appointed them [and] exercise substantial influence on the implementation and success of City programs."); *Walsh v. Heilman*, 2006 WL 1049598 at * 5 (N.D. Ill. 2006) (administrative hearing officer possessed powers similar to those held by state and federal judges, which could be used in a discretionary fashion to thwart or promote the political agenda of the village's mayor). *Cf. Gregory v. Ashcroft*, 501 U.S. 451 (1991) (holding that state-court judges are policymaking employees under the Age Discrimination in Employment Act).

Local ALJs like plaintiff fit this test—they are not protected by the District's civil service laws, but serve a renewable, time-limited term; they have special expertise deriving from an advanced education; and they exercise substantial influence on the implementation and success of District programs.

In light of the above, the Court should find that plaintiff was a "policymaker" pursuant to the *Elrod-Branti* exception and, notwithstanding the First Amendment, enjoyed no protection from "termination."[9]

---

[9]     In fact, plaintiff's claim is even more attenuated here—he was not dismissed, his appointment simply was not renewed.

**e. Plaintiff's "Speech" Derived From—and was Required by—his Job Duties.**

Plaintiff concedes that he was "require[d]" to speak out about what he perceived was unprofessional or unethical conduct. Amended Complaint ¶ 61. But an employee's "speech" made pursuant to his official duties is *not* entitled to First Amendment protection. *Thompson v. District of Columbia*, 530 F.3d 914, 916 (D.C. Cir. 2008) (employees' speech "on subjects directly related to their jobs . . . receive[s] no First Amendment protection."). *See also Ghaly v. Simsarian*, ___ F.Supp.2d ___, 2009 WL 801636, *10 (D.Conn. Mar. 26, 2009) (even if "primary aim" of plaintiff-physician's speech disagreeing with management's policies was to address patient care, it would not qualify for First Amendment protection because she had an ethical obligation to report any such concerns, and was also required to do so by her agency's rules).

Plaintiff cannot seriously contend that his speech was not directly related to his job. Plaintiff has not rebutted the District's showing that, in light of his job description and actual job performance, *all* of his purported speech here "owe[d] its existence to [his] professional responsibilities." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Plaintiff's speech was thus not entitled to First Amendment protection. *See also Meggison v. Charlevoix County*, ___ F.Supp.2d ___, 2008 WL 5411896 at * 7 (W.D. Mich. Dec. 23, 2008) (rejecting plaintiff's First Amendment retaliation claim) ("The entire subject matter of [plaintiff's] speech owes its existence to her role as Jail Administrator. Her knowledge of the issue and her obligation to help remedy the problem arose solely as a consequence of her employment.").

The fact that plaintiff took his concerns "public" after his supervisors failed to act as he requested does not change this analysis.

> Plaintiff's complaints to her supervisor about questionable Title I expenditures
> flowed directly form her duties and responsibilities as an employee of the

> Defendant School District. When her protests through the chain of command proved unavailing, she repeated precisely the same complaints to an outside audience. This Court fails to see how the broader dissemination of precisely the same speech alters the fundamental nature of the underlying communication, such that what was once a part of the employee's official duties becomes the speech of a private citizen.

*Omokehinde v. Detroit Bd. of Educ.*, 563 F.Supp.2d 717, 728 (E.D. Mich. 2008). *See also Andrew v. Clark*, 472 F.Supp.2d 659, 662 n. 4 (D. Md. 2007) ("The 'internal memorandum' prepared by [plaintiff] never lost its character as speech pursuant to his official duties simply by virtue of the wider dissemination he elected to give it after his recommendations were ignored by the police commissioner.").

### 4. The District's Evidence is Admissible.

To the extent plaintiff argues that summary judgment should be denied because the District failed to present any admissible evidence, he is incorrect as a matter of law. A party moving under Rule 56 need not present "affidavits or other similar materials negating the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, the District can (and did) carry its initial burden on summary judgment by doing no more than "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id*.

Notwithstanding this, the District presented the entire, extensive record on which the Commission based its decision. Each of the exhibits proffered by the defendants is admissible. *See Moncada v. Peters*, 579 F.Supp.2d 46, 51 (D.D.C. 2008) (per Fed.R.Evid. 901, the proponent "need only offer proof sufficient for a reasonable fact finder to conclude that the evidence in question is what the proponent says it is."); *United States v. Safavian*, 435 F.Supp.2d 36, 38 (D.D.C. 2006) ("The threshold for the Court's determination of authenticity is not high. [T]he

proponent need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be") (citations omitted)).

All of the District's exhibits meet this threshold, and are self-explanatory, on the face of the documents themselves. *See United States v. Tann*, 425 F.Supp.2d 26, 35 (D.D.C. 2006) (a document may be authenticated based on its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with the circumstances.") (quoting Fed.R.Evid. 901(b)(4)). The proffered documents are what they purport to be, and plaintiff does not seriously contend otherwise.

Nonetheless, the District provides a declaration from defendant Butler (copy attached), pursuant to Fed.R.Evid. 803(6). That declaration authenticates defendants' exhibits 2 through 5, and 7 through 17. *See United States v. Adefehinti*, 510 F.3d 319, 324 (D.C. Cir. 2008) (records were admissible under "business records exception" to hearsay rule because they were accompanied by a declaration of the records' custodian "or other qualified person" conforming to Fed.R.Evid. 902(11)). "To lay an adequate foundation under Rule 902(11) [or under Rule 803(6)], the [declarant] need not have personal knowledge of the actual creation of the document." *Id*. (citations omitted).

The documents not covered by the Butler Declaration are separately admissible. DEx. 1, a copy of the committee report on the District legislation establishing the Office of Administrative Hearings, is a "public record" as that term is defined in Fed.R.Evid. 803(8), and hence admissible on that basis. *See Barry v. Trustees of Int'l Ass'n Full-Time Salaried Officers & Employees of Outside Local Unions & District Counsel's (Iron Workers) Pension Plan*, 467 F.Supp.2d 91, 96 (D.D.C. 2006) (the party challenging the admissibility of a public report "bears the burden of demonstrating that the report is not trustworthy.") (citations omitted).

DEx. 6 is a copy of the testimony presented by plaintiff to the Council and, like DEx. 2, 3, 4, 7, 11, 14, and 17, is admissible as the statement of a party-opponent, pursuant to Fed.R.Evid. 801(d)(2)(A). *See Safavian*, 435 F.Supp.2d at 43 (admitting into evidence e-mails attributed to defendant as admissions of a party-opponent).

### 5. Plaintiff's Due Process Claims Fail.

Plaintiff has failed to rebut the controlling case law cited by the District regarding due process, claiming that he was provided "virtually none" of the process due him. P.Opp. at 22. *See also id.* at 44 (defendants failed "to provide even the bare minimum of due process"). These allegations collapse utterly in light of the undisputed facts in the record. The District avers, again, that plaintiff complains not of a *lack* of due process, but the *results* of that process. Plaintiff himself admits that he was provided multiple opportunities to submit evidence and meet with the Commission regarding his reappointment application. Amended Complaint ¶¶ 159, 160, 203, 206, 210, 212. *See also* SMF ¶¶ 13, 17–18, 21, 23. The record evidence is overwhelming that the defendants went out of their way to provide much more process than was due. By plaintiff's own admission, he had ample opportunities to present his case; due process requires no more.

Plaintiff makes a brief mention of *Halleck v. Berliner*, 427 F.Supp. 1225 (D.D.C. 1977), but fails to acknowledge that that decision is almost directly on point here, and requires granting the District's dispositive motion. The court in *Halleck* found that plaintiff (a Superior Court judge denied reappointment) had been accorded due process, because the Commission had notified him of the areas of its concern, advising him of the specific incidents that gave rise to such concern, had afforded him a day-long hearing and an opportunity to respond to the

Commission's inquiries through documents and testimony. *Id*. at 1236. Plaintiff does not—because he cannot—meaningfully distinguish *Halleck*.

Stumbling on, plaintiff argues that he has a "right" to confront witnesses against him. The Constitution's Confrontation Clause does not apply in the civil context. *See, e.g., Dutton v. Evans*, 400 U.S. 74, 97 n.4 (1970) (Harlan, J., concurring) (Confrontation Clause applies only to criminal prosecutions). *Cf. Wolff v. McDonnell*, 418 U.S. 539, 567–68 (1974) (rights of confrontation and cross-examination not universally applicable to prison disciplinary hearings); *U.S. Steel, LLC, v. Tieco, Inc*., 261 F.3d 1275, 1287 n. 13 (11th Cir. 2001) (noting that "[o]f course, the Confrontation Clause is not applicable to civil cases"); *United States v. Flores*, 985 F.2d 770, 781 (5th Cir. 1993) ("The hearsay rules operate in civil as well as criminal proceedings, and may be invoked by the government as well as by the citizen. But the Confrontation Clause applies only in criminal prosecutions and protects only the accused.").

Here, plaintiff complains that due process required, *inter alia*, an opportunity to confront the witnesses against him and "prior disclosure of all witnesses and evidence against him . . . ." P.Opp. at 21–22. But plaintiff cannot reasonably dispute that he had advanced notice of all the bases of possible non-renewal of his appointment, and copies of every document used to make that decision. He received much more than the principle of due process requires. *See Solomon v. Office of the Architect of the Capitol*, 539 F.Supp.2d 347, 351 (D.D.C. 2008) (dismissing employee's claim that his termination violated due process because he was not provided with a copy of the administrative hearing officer's report, because agency's rules did not require employee to be given a copy of the report; "plaintiff was entitled to, and received, notice and an opportunity to be heard.") (citing, *inter alia*, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982) (finding that notice and "some form of hearing" are all that due process requires)).

6. *Plaintiff's Whistleblower Protection Act Claims Fail.*

Plaintiff continues to insist that the DCWPA confers a private right of action against individuals, although he fails to cite a single case in support of that proposition, and fails to even mention those cited by the District. P.Opp. at 27–29. Plaintiff remains wrong as a matter of law. *See, e.g., Williams v. Johnson*, 537 F.Supp.2d 141, 148–49 (D.D.C. 2008); *Tabb v. District of Columbia*, 477 F.Supp.2d 185, 189 (D.D.C. 2007).

Plaintiff cannot meet the DCWPA standard of a protected disclosure—"one that the employee reasonably believes reveals such serious errors by the agency that a conclusion the agency erred is not debatable among reasonable people." *Wilburn v. District of Columbia*, 957 A.2d 921, 925 (D.C. 2008). Plaintiff, oddly, ignoring *Wilburn*, asserts that a case from *three years earlier* states the "correct" standard. P.Opp. at n.15. Notwithstanding such an obvious error, plaintiff never discusses (or even acknowledges) the Mayor's and the Council's refusal to act on any of plaintiff's concerns at any time.

Similarly, plaintiff maintains his incorrect argument that local ALJs are the equivalent of Article III judges, purporting to distinguish the cases cited by the District because they involved "federal" ALJs. *See id.* at n.16. Plaintiff's error is manifest, and demonstrated in language cited by plaintiff himself. *See* D.C. Official Code § 2-1831.02 ("The District of Columbia [OAH] is established as an independent agency *within the executive branch* of the District of Columbia government . . . .") (emphasis added). That language, which created OAH within the executive (*i.e.*, not judicial) branch of government, is precisely why the federal cases are directly on point here. *See, e.g., Ass'n of Admin. Law Judges, Inc. v. Heckler*, 594 F.Supp. 1132, 1141 (D.D.C. 1984) ("On matters of law and policy . . . ALJs are entirely subject to the agency . . . . Although

an ALJ may dispute the validity of agency policy, the agency may impose its policy [over the ALJ]." (citations omitted)).

### 7. Plaintiff Cannot Show Intentional Infliction of Emotional Distress.

In perhaps his "purplest" prose, plaintiff insists that "it shocks the mind to read about an administrative law judge who was the target of a campaign of harassment, death threats and terror engineered by the very persons charged with sheltering him from all improper pressures." P.Opp. at 36. The facts here, even if accepted as true, simply do not rise to the level required to state an IIED claim. Plaintiff's allegations do not meet this threshold, as demonstrated by the cases he cites. *Id*. at 35–36.

### 8. The District is Not Liable Under 42 U.S.C. § 1983.

Put simply, the District is not liable under § 1983 because the individual defendants here "possessed only the authority to make employment *decisions* (*i.e.*, transferring or terminating an agency employee), *not* the authority to set employment *policy* for the City." *Fox v. District of Columbia*, 990 F.Supp.13, 20 (D.D.C. 1997) (emphasis in original) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 128–30 (1988) (plurality opinion); 140–42 (Brennan, J., concurring)). *See also Pembaur v. Cincinnati*, 475 U.S. 469, 484 n.12 (1986) (the official "may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the [official's] decision respecting employment would not give rise to municipal liability.").

Plaintiff cannot demonstrate that any of the individual defendants was a final decision-maker with respect to employment policy for the District. Consequently, summary judgment on the question of municipal liability should be granted to the District.

Moreover, "the District of Columbia cannot be held liable because plaintiff has failed to demonstrate that the District had a custom or policy of retaliating against employees for exercising their First Amendment rights." *Tabb v. District of Columbia*, ___ F.Supp.2d ___, 2009 WL 711773 (D.D.C. Mar. 19, 2009). Plaintiff has not "pointed to any other employee who suffered similar retaliation. The policy or custom must be pervasive to support municipal liability." *Id*. (citing *Carter v. District of Columbia*, 795 F.2d 116, 123–24 (D.C. Cir. 1986)).

Plaintiff also ignores a crucial distinction when he asserts (without authority) that each defendant had the power "to either recommend and/or vote" on plaintiff's reappointment request. P.Opp. at 25. Non-voting members of the Commission cannot be liable for actions of the Commission requiring a vote. Defendants Valentine and Butler cannot be held liable under § 1983, nor can the District be liable for their actions, because they were *non-voting* members of the Commission. D.C. Official Code § 2-1831.07(a); Amended Complaint ¶¶ 27–28. *See, e.g., Koulkina v. City of New York*, 559 F.Supp.2d 300, 317–18 (S.D.N.Y. 2008) (dismissing § 1983 claims against non-voting member of independent board which investigated complaints against the police, despite his recommendation, which was adopted by the board) (citing, *inter alia, Keesh v. Goord*, 2007 WL 2903682 at * 6 (W.D.N.Y. 2007) (dismissing § 1983 claim where defendant was non-voting member of committee that oversaw prisoner grievances and merely signed committee's determination)); *cf. Harel v. Rutgers Univ.*, 5 F.Supp.2d 246, 268 (D.N.J. 1998) (dismissing § 1983 claims against university based on recommendations of president and vice-president to deny tenure, because only Board of Governors was authorized to make final

tenure determinations; to do otherwise "would be to impose liability on the prohibited theory of *respondeat superior*.").

Plaintiff claims that he sufficiently alleges and details the "deliberate indifference" of the Mayor and the Council to his disclosures, P.Opp. at 24 n.10, although that phrase appears nowhere in the Amended Complaint. Plaintiff cannot meet his burden, notwithstanding that the phrase is a term of art, and plaintiff applies it incorrectly here.

Deliberate indifference is determined objectively, "by analyzing whether the municipality knew or should have known of the risk of constitutional violations," and yet failed to respond as necessary. *Baker v. District of Columbia*, 326 F.3d 1302, 1307 (D.C. Cir. 2003).

Plaintiff cannot meet this "stringent standard," because he cannot show that the District's action was taken "with 'deliberate indifference' as to its known or obvious consequences." *Board of the County Commissioners v. Brown*, 520 U.S. 397, 407 (1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Plaintiff cannot demonstrate any "municipally established policy" to deprive him of his constitutional rights. For liability to attach to the District, a plaintiff must provide specific and detailed evidence of a continuing policy or pattern of unconstitutional conduct that was either condoned or deliberately ignored by the District. *Daskalea v. District of Columbia*, 227 F.3d 433, 441–42 (D.C. Cir. 2000); *Carter v. District of Columbia*, 795 F.2d 116, 125–26 (D.C. Cir. 1986) (plaintiffs must prove "a persistent, pervasive practice, attributable to a course deliberately pursued by official policy-makers, one that caused the deprivation of constitutional rights plaintiffs [allegedly] experienced."). Evidence of a *single incident* is not sufficient to show the existence of a policy or pattern. *See Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988); *Reed v. District of Columbia*, 474 F.Supp.2d 163, 168 (D.D.C. 2007) (single incident is

insufficient to impose liability against the District; plaintiffs must show that the alleged action "was so widespread as to constitute a custom, practice, or policy").

Here, all plaintiff has is the Commission's decision declining to reappoint him. This single incident is insufficient, as a matter of law, to hold the District liable because "there can be no notice to the [municipality], based on previous violations of federally protected rights, that this approach is inadequate." *Brown*, 520 U.S. at 408.

> To the extent that we have recognized a cause of action under § 1983 based on a single decision attributable to a municipality, we have done so only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation.

*Id*. at 405.

All of plaintiff's claims fail as a matter of law. Notwithstanding ample opportunity to do so, and briefing at length, plaintiff fails to support any claims sufficiently to avoid an adverse judgment. Accordingly, summary judgment on plaintiff's claims under 42 U.S.C. § 1983 should be granted to the defendants. *See, e.g., Powers-Bunce v. District of Columbia*, 479 F.Supp.2d 146, 157 (D.D.C. 2007) ("[T]here is no vicarious liability for constitutional violations.") (citing cases).

## C. Conclusion

For all the reasons stated herein, and in its previous filings, the District respectfully requests the Court to dismiss the Amended Complaint or, in the alternative, to grant summary judgment to defendants on all claims.

DATE: April 27, 2009            Respectfully submitted,

                                PETER J. NICKLES
                                Attorney General for the District of Columbia

                                GEORGE C. VALENTINE
                                Deputy Attorney General, Civil Litigation Division

/s/ Ellen A. Efros
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431


/s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 27, 2009, copies of the defendants' Reply and all accompanying documents were filed with the Court's Electronic Case Filing system, sent electronically to roypearsonjr@verizon.net, and sent by U.S. Mail, first-class, postage-prepaid, to:

Roy L. Pearson, Jr.
3012 Pineview Court, N.E.
Washington, D.C. 20018


/s/ Andrew J. Saindon

- 24 -