UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROY L. PEARSON, JR., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.08-00758 (ESH) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
FOR INJUNCTIVE RELIEF

Defendants (collectively, "the District"), by and through undersigned counsel, hereby submit this Memorandum of Points and Authorities in Opposition to Plaintiff' Motion for Partial Summary Judgment, and in Opposition to Plaintiff's Motion for Injunctive Relief, in accordance with LCvR 7(b) and (d), and LCvR 65.1(c).

As required by LCvR 56.1, defendants' Opposition to Plaintiff's Statement of Material Facts as to Which no Genuine Dispute Exists has also been provided, as well as proposed Orders.

I. Introduction and Summary of Argument

The Court should deny plaintiff's motion. Plaintiff presents no new arguments or persuasive evidence. Indeed, plaintiff profoundly misunderstands preliminary injunction law, because it is abundantly clear that plaintiff has not suffered irreparable harm. Despite plaintiff's invocation of LCvR 65.1, there is no "emergency" here, and for that reason alone plaintiff is not entitled to the extraordinary remedy of injunctive relief.

Rather than burden the Court with repetitive arguments and add to the reams of paper already sacrificed here, and in light of the expedited timeframe mandated by LCvR 65.1(c), the defendants incorporate by reference herein all their previous filings, and will endeavor to respond only to plaintiff's more egregious points.

The Court should reject plaintiff's cynical (if not actual bad faith) litigation tactic of vehemently challenging the "identification and authentication" of the District's exhibits, and then turning around in this motion and submitting many of those very same exhibits as evidence. Even if that effort does not rise to the level of judicial estoppel, such bald hypocrisy should at least caution the Court to be skeptical of plaintiff's claims.

Plaintiff's effort fails as a matter of law. His primary evidence consists of his own conclusory assertions, which are insufficient to carry his burden. "'[A] mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment.'" *Ginger v. District of Columbia*, 527 F.3d 1340, 1347 (D.C. Cir. 2008) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)). *See also, e.g., Bonieskie v. Mukasey*, 540 F.Supp.2d 190, 195 (D.D.C. 2008) ("Summary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements.").[1]

## II. Argument

*A. Plaintiff is Not Entitled to Summary Judgment.*

Plaintiff is not entitled to summary judgment on Count III.

---

[1] Plaintiff's "affidavit/declaration" is not simply a recitation of facts, but is teeming with legal argument. *See* Affidavit/Declaration of Roy L. Pearson, Jr. (June 14, 2009), ¶¶ 7–10. "Arguments of counsel do not substitute for evidence that establishes a genuine issue of material fact." *Internet Financial Services, LLC v. Law Firm of Larson-Jackson, P.C.*, 310 F.Supp.2d 1, 4 (D.D.C. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In considering plaintiff's motion, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the District. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998). Moreover, "the evidence offered by [the District] must be accepted as correct, and all justifiable inferences must be drawn in [its] favor." *Goldman v. Bequai*, 19 F.3d 666, 672 (D.C. Cir. 1994) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Summary judgment may not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Where more than one plausible inference can be drawn from the undisputed facts, summary judgment is not appropriate. *See United States v. Spicer*, 57 F.3d 1152, 1160 (D.C. Cir. 1995).

All the evidence and inferences drawn from it here show that the defendants are entitled to summary judgment, as they have amply demonstrated in their previous filings.

Emblematic of plaintiff's flawed approach, in his instant motion he argues that the Office of Administrative Hearings ("OAH") Establishment Act "prohibits the Chief ALJ from using subjective evaluation standards as measures of an ALJ's performance." P.Mem. at 8 n.2. Plaintiff is simply wrong on the law. The first provision he cites, D.C. Official Code § 2-1831.05(a)(10), states, in its entirety, that the Chief ALJ shall: "Develop and implement annual performance standards for the management and disposition of cases assigned to Administrative Law Judges, which shall take account of subject matter and case complexity [.]" That language, obviously "prohibits" nothing,

and grants the Chief ALJ wide discretion to establish performance standards for ALJs, subjective, objective, or otherwise. The second provision cited, § 2-1831.10(b) states, in relevant part:

> [T]he Chief Administrative Law Judge shall prepare a record of the Administrative Law Judge's performance with regard to that judge's efficiency, efficacy, and quality of performance over the period of his or her appointment. [A]t a minimum, the record shall contain at least one year of decisions authored by the Administrative Law Judge, data on how the Administrative Law Judge has met *applicable objective performance standards*, the Chief Administrative Law Judge's recommendation as to whether the reappointment should be made, and *any other information requested* by one or more members of the Commission. The members of the Commission *shall consider all information received* with regard to reappointment, and the voting members shall give significant weight to the recommendation of the Chief Administrative Law Judge, unless it is determined that the recommendation is not founded on substantial evidence.

*Id.* (emphasis added).

Thus, far from "prohibiting" the use of "subjective evaluation standards," these provisions merely list the factors that, "at a minimum," must be included in the record of an ALJ seeking reappointment. The law explicitly directs the members of the Commission to consider "all information received with regard to reappointment," *id.*, which is eminently reasonable considering the responsibilities of an ALJ. Plaintiff has cited no case law requiring *only* "objective" criteria to be used in employment decisions, and the District is aware of none. "[E]mployers may of course take subjective considerations into account in their employment decisions . . . ." *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879 (D.C. Cir. 1997), *overturned on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*)). *See also Vasilevsky v. Reno*, 31 F.Supp.2d 143, 151 (D.D.C. 1998) ("An employer is entitled to rely on his own perception of an employee's work performance."). *Cf. McReynolds v. Sodhexo Marriott Servs., Inc.*, 208 F.R.D. 428, 442 (D.D.C. 2002) (defendant's "overall promotion practices remain entirely subjective, because the decision of whether to use objective criteria—and if so, which criteria to use—is a matter left to the discretion of the individual manager.") (footnote omitted)).

Similarly, plaintiff continues to equate "untimely" with "illegal," *see, e.g.,* P.Mem. at 9 n.3, asserting, apparently, that any action taken by any defendant outside certain deadlines is a nullity and automatically entitles him to prevail. Plaintiff has never provided any support in case law, or even common sense, for that proposition. *See, e.g.*, *Gallothom, Inc. v. D.C. Alcoholic Beverage Control Bd.*, 820 A.2d 530, 535 (D.C. 2003) (statutory deadlines for agency action are directory rather than mandatory, if the statute provides no sanction for noncompliance).

As the District has abundantly demonstrated, even if plaintiff had a "legitimate expectation" of reappointment (which the defendants do not conceded), that "entitlement" can be denied so long as plaintiff receives due process. *See, e.g., Jones v. Flowers*, 547 U.S. 220, 224 (2006) (due process requires "notice and opportunity for hearing appropriate to the nature of the case.") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Plaintiff complains not of a *lack* of due process, but the *results* of that process. Plaintiff has conceded that he was provided multiple opportunities to submit evidence and meet with the Commission regarding his reappointment application. Amended Complaint ¶¶ 159, 160, 203, 206, 210, 212. *See also* SMF ¶¶ 13, 17–18, 21, 23. Due process requires no more.

Plaintiff also argues that the OAH Act "prohibits" a delayed vote on a reappointment application. P.Mem. at 25–26 & n.13. Plaintiff, again, is wrong on the law.

As plaintiff concedes, the OAH's regulations provide that if a timely vote does not occur, the ALJ applying for reappointment may "be retained as a non-judicial employee of the [OAH], without reduction in grade or step, until the Commission votes on his or her reappointment." 6 DCMR § 3705.26. That process is exactly what occurred here. *See* Plaintiff's Exhibits No. 16, 17. There is no "conflict" between the OAH Act and the regulations; that Act explicitly provides that proposed regulations must be submitted to the Council for a 45-day period of review and, if not

disapproved within that time period, they are "deemed approved." D.C. Official Code §§ 2-1831.11(a), (b). Thus, because the rules were approved by the Council, they are entirely consistent with the OAH Act.

Plaintiff also makes a half-hearted, last-second attempt to allege that the Commission was not a neutral decisionmaker, *see* P.Mem. at 35–37, but provides no evidence of bias. Tellingly, there is no indication that plaintiff himself ever requested the recusal of any member of the Commission.

Plaintiff again complains of the "secrecy" of some Commission proceedings, incorrectly assuming that he had a right to confront all witnesses against him in this civil matter, arguing that such efforts did not "cue" him of the need to present evidence on his behalf.[2] P.Mem. at 38. The District avers that this argument is disingenuous coming from someone with plaintiff's experience, and little more than an attempt to shift the blame for his failure to present any witnesses on his behalf.[3]

While plaintiff repeatedly cites *Halleck v. Berliner*, 427 F.Supp. 1225 (D.D.C. 1977), he again fails to distinguish it. That decision, as the District has argued previously, requires the granting of the defendants' dispositive motion. *See id.* at 1236 (held: plaintiff (a Superior Court judge denied reappointment) received due process because Commission notified him of the areas of its concern, advised him of the specific incidents that gave rise to such concern, and afforded

---

[2] Plaintiff also contends that the Commission's notice of possible denial of reappointment "charged" him with "multiple disciplinary offenses . . . ." P.Mem. at 41. That document, Plaintiff's Exhibit No. 23 (Defendants' Exhibit No. 13), did not purport to do any such thing, and never referenced (or even hinted at) the regulations plaintiff cites. Again, it appears that plaintiff is intentionally conflating the process due to *criminal* defendants with the process required in civil proceedings. "The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases . . . ." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 n.22 (1996).

[3] Plaintiff's ego remains intact: He complains that this "secrecy" failed to give him the opportunity "to correct" the recollections of another ALJ. P.Mem. at 38.

him a day-long hearing and an opportunity to respond to the Commission's inquiries through documents and testimony). Plaintiff received even *more* process than Judge Halleck.

*B. Plaintiff Fails to Meet Any of the Elements Necessary for the Grant of Emergency Injunctive Relief.*

Notwithstanding the above, in order to obtain emergency injunctive relief, plaintiff must satisfy *each* prong of the following four-part test, by demonstrating: (1) a substantial likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) less injury to the non-moving party than the moving party if an injunction is ordered; and (4) that a preliminary injunction is consistent with the public interest. *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998).

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (emergency injunctive relief "is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion.") (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (interim injunctive relief is "an extraordinary and drastic remedy")).

While a strong showing on one of the four factors may make up for a weaker showing on another, *Serono Labs.*, 158 F.3d at 1318, a particularly weak showing on one factor may be more than the other factors can "compensate" for. *Taylor v. RTC*, 56 F.3d 1497, 1506 (D.C. Cir. 1995), *amended on other grounds on reh'g.*, 66 F.3d 1226 (D.C. Cir. 1995). *Cf. Cuomo v. U.S. Nuclear Reg. Comm'n*, 772 F.2d 972, 974 (D.C.Cir. 1985) (*per curiam*) ("[a] stay may be granted with either a high probability of success and some injury, or *vice versa*."). *But cf. American Bankers Ass'n v. National Credit Union Admin.*, 38 F.Supp.2d 114, 141 (D.D.C. 1999) (absent a "substantial likelihood" of success on the merits, "there would be no justification for the court's

intrusion into the ordinary processes of administration and judicial review.") (quoting *WMATC v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)).

Plaintiff has failed to make a satisfactory showing on *any* of the four factors, hence his demand for emergency injunctive relief should be denied.

Indeed, the Supreme Court has recently reiterated that a party seeking emergency injunctive relief must show that success on the merits and irreparable harm are *likely*, and not merely possible. *See Winter v. NRDC*, ___ U.S. ___, 129 S.Ct. 365, 375 (Nov. 12, 2008); *Munaf v. Geren*, ___ U.S. ___, 128 S.Ct. 2207, 2219 (Jun. 12, 2008). Plaintiff fails to meet this burden.

Moreover, plaintiff argues that enjoining the District here will maintain the status quo. Plaintiff is incorrect. A preliminary injunction here will *not* preserve the status quo, but will require the District to act affirmatively. Plaintiff's requested emergency injunction would require the District to take no less than eight (8) affirmative actions. P.Mem. at 43–44. As such, a preliminary injunction here would be a "mandatory injunction" requiring plaintiffs to meet a higher standard than the typical four-part test for the usual "prohibitory" injunction. *See Farris v. Rice*, 453 F.Supp.2d 76, 78 & n.1 (D.D.C. 2006) (citing, *inter alia*, *Veitch v. Danzig*, 135 F.Supp.2d 32, 35 & n.2 (D.D.C. 2001)).

Plaintiff must therefore show "clearly" that he is entitled to immediate relief or that "extreme or very serious damage" will result from the denial of the emergency injunction. *Farris*, 453 F.Supp.2d at 78 (citations omitted). Plaintiff cannot meet this considerable burden.

1. Plaintiff Fails to Establish A Substantial Likelihood of Success On the Merits.

For all the reasons stated by the defendants previously and herein, plaintiff has no chance of success on the merits.

2. <u>Plaintiff Fails to Establish Irreparable Harm As A Matter of Law</u>.

Plaintiff has failed to make a showing of irreparable harm and therefore his demand for emergency injunctive relief must fail.

An essential prerequisite to injunctive relief is a sufficient showing by plaintiff that he will suffer irreparable harm if the injunctive relief is not granted. *See*, *e.g.*, *Davenport v. International Brotherhood of Teamsters,* 166 F.3d 356, 360 (D.C. Cir. 1999). *See also Sampson v. Murray*, 415 U.S. 61, 88–90 (1974).

At a minimum, a plaintiff seeking emergency injunctive relief must make a threshold showing of irreparable injury. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) ("we require the moving party to demonstrate at least 'some injury . . . .'") (citing, *inter alia, Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989) (preliminary injunction properly denied "where moving party may have been 'likely to succeed' but did not carry burden of showing irreparable harm, since 'the basis of injunctive relief in the federal courts has always been irreparable harm.'") (quoting *Sampson*, 415 U.S. at 88 and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 (1959))).

"[C]ases are legion holding that loss of employment does not constitute irreparable injury." *Farris*, 453 F.Supp.2d at 79 (citing cases).[4] *See also Washington*, 530 F.Supp.2d at 169–

---

[4] The plaintiff in *Farris* sought a preliminary injunction to prevent her statutory mandatory retirement, arguing that she feared an inability to be reemployed at all, much less in a comparable position. *Id*. at 80. The court denied the request for emergency injunctive relief, noting that only in "extraordinary cases" is such relief appropriate in the employment context. *Id*. The court distinguished the cases cited by plaintiff, finding that, because of her educational background and extensive career experience, "the plaintiff here stands a far better chance of obtaining significant alternative work than did the plaintiff in [*Bonds v. Heyman*, 950 F.Supp. 1202 (D.D.C. 1997) (abrogated on other grounds)] . . . ." *Id*. at 81. So too here; not only has plaintiff already experienced the harm he alleges, his professed inability to find other work cannot be attributed to the actions of the defendants alone. *See* Affidavit/Declaration of Roy L. Pearson, Jr. (June 14, 2009), ¶ 28 ("Because of the time that prosecution of this lawsuit

70 ("[i]n the context of government employment, irreparable harm requires more than a showing of financial distress or inability to find other employment."); *id*. at 171 ("an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual") (quoting *Sampson*, 415 U.S. at 92 n.68). *See also Hubbard v. United States*, 496 F.Supp.2d 194, 202–203 (D.D.C. 2007) (although plaintiff, a CPA disbarred by the IRS from representing clients before that agency, had shown irreparable injury due to the imminent destruction of his business, reputation, and livelihood, preliminary injunction was denied).

> [T]he extraordinary relief of an injunction is not merely a protection against harm. Rather, it is a protection against an alleged harm for which an individual is likely to succeed on the merits of his underlying claims, and injunctive relief will never be granted unless a claimant can demonstrate "a fair ground for litigation."

*Id*. (quoting *Katz v. Georgetown Univ.*, 246 F.3d 685, 688 (D.C. Cir. 2001)).

Plaintiff makes no competent showing of irreparable injury. Consequently, the Court may deny his request for emergency injunctive relief without considering any other factors. *CityFed*, 58 F.3d at 747.

The defendants do not doubt that plaintiff was attached to his previous position as an ALJ, but that attachment is insufficient to warrant the grant of emergency injunctive relief. *See Farris*, 453 F.Supp.2d at 81 n.2 ("[T]he plaintiff's subjective attachment to her employment may

---

consumes it would be impossible for me to work a full-time job in any event."). *Cf. Washington v. District of Columbia*, 530 F.Supp.2d 163, 170 (D.D.C. 2008) (plaintiffs' averments as to "advanced age, limited education, diminished financial resources, and circumscribed employment opportunities" insufficient to demonstrate irreparable injury).

-10-

demonstrate the personal harm her involuntary retirement will have, but it does not, of its own, bolster a claim of irreparability.").

To the extent plaintiff claims his constitutional rights were violated in the past, he has similarly failed to meet his burden. *See, e.g., Wagner v. Taylor*, 836 F.2d 566, 577 n. 76 (D.C.Cir.1987) ("[I]n cases involving a claim by movant of interference with protected freedoms or other constitutional rights, . . . the finding of irreparable injury cannot meaningfully be rested on a mere contention of a litigant."); *Veitch*, 135 F.Supp.2d at 37 (violation of constitutional rights is not itself an irreparable harm) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Ashland Oil, Inc. v. FTC*, 409 F.Supp. 297, 307 (D.D.C. 1976) ("[T]he required showing of irreparable injury is not eliminated simply by virtue of a claim alleging violation of statutory or constitutional rights."), *aff'd*, 548 F.2d 977 (D.C.Cir.1976).

The allegation of constitutional violations that plaintiff alleges has *already occurred*, hence emergency injunctive relief is inappropriate on that ground alone. "Past constitutional violations, therefore, are not sufficient *alone* to satisfy the irreparable harm requirement; the violation must be either ongoing or threatened." *Mills v. District of Columbia*, 584 F.Supp.2d 47, 63 (D.D.C. 2008) (emphasis in original) (citations omitted).

Notwithstanding this, imminent violation of constitutional rights—even if proven—does not, by itself, constitute irreparable injury. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006) (holding that, "in this court, as in several others, there is no *per se* rule that a violation of freedom of expression *automatically* constitutes irreparable harm.") (emphasis in original). *See also Mills*, 584 F.Supp.2d at 62 ("Our Circuit has provided that in cases involving plaintiffs seeking injunctive relief for alleged constitutional violations the

-11-

plaintiffs' claim for irreparable harm is directly contingent on their showing a substantial likelihood of success on the merits.") (citations omitted).[5]

Because plaintiff does not have a substantial likelihood of success, and because plaintiff fails to make a convincing showing of irreparable harm, his request for a preliminary injunction must fail.

3. <u>The Balance of Equities Favors the Denial of the Injunctive Relief Sought</u>.

Plaintiff here seeks to require the District to take numerous, affirmative actions, including reinstating him with backpay, and adopting new regulations and "rescinding" existing regulations. P.Mem. at 43–44. Such actions would have a seriously disruptive effect on the operations of the OAH. "[I]n employment cases particularly, the court 'is bound to give serious weight to the obviously disruptive effect which the grant of the temporary relief [is] likely to have on the administrative process,' and not 'routinely apply [ ] . . . the traditional standards governing more orthodox 'stays.'" *Farris*, 453 F.Supp.2d at 78 (quoting *Sampson*, 415 U.S. at 83–84).

When considering the harm to the parties in determining the balance of equities, the Court must not only consider the parties to this case, but also the public. *See Majhor v. Kempthorne*, 518 F.Supp.2d 221, 255 (D.D.C. 2007) (court must consider "the extent to which a preliminary injunction would 'substantially injure other parties.'") (quoting *CityFed*, 58 F.3d at

---

[5] The case plaintiff cites, *Davis v. District of Columbia*, 158 F.3d 1342 (D.C. Cir. 1998) is easily distinguished. "Although a plaintiff seeking equitable relief must show a threat of substantial and immediate irreparable injury, a prospective violation of a constitutional right constitutes irreparable injury for these purposes." *Id*. at 1346 (citations omitted). Here, there is, of course, no *prospective* violation of *any* of plaintiff's rights, hence emergency injunctive relief is inappropriate, even assuming plaintiff could show irreparable injury.

746); *Cortez III Service Corp. v. NASA*, 950 F.Supp. 357, 363 (D.D.C. 1996) (plaintiff seeking emergency relief must establish that the injunction will harm neither defendants nor "any other interested party.").

The balance of equities tips decidedly in favor of the District here.

4. <u>The Public Interest Favors the Defendants</u>.

It is plaintiff's self-interest, not the public interest, which is at the root of his claims. The public interest favors denying the motion for emergency injunctive relief.

The public interest lies with the District being permitted to exercise its considerable discretion in the retention of employees.

"[T]he court considers compelling and insurmountable the institutional harm attendant to judicial interference with [government] personnel actions." *Farris*, 453 F.Supp.2d at 81 (citing, *inter alia, Nichols v. Agency for Int'l Dev.*, 18 F.Supp.2d 1, 6 (D.D.C. 1998) (the government "would be paralyzed from taking necessary personnel action every time an employee believed that his or her termination or involuntary separation was animated by discriminatory or retaliatory animus.")).

Thus, even if plaintiff had shown irreparable injury, "[w]here an injunction may adversely affect a public interest, the Court, in its exercise of discretion, may withhold such relief even though such denial may prove burdensome and cause hardship to the petitioner." *Marine Transport Lines, Inc. v. Lehman*, 623 F.Supp. 330, 334–35 (D.D.C. 1985) ("The award of such relief is not a matter of right, even though the petitioner claims and may incur irreparable injury.").

For the reasons discussed herein, "[i]t is in the public interest to deny injunctive relief when the relief is not likely deserved under the law." *Hubbard*, 496 F.Supp.2d at 203 (quoting *Qualls v. Rumsfeld*, 357 F.Supp.2d 274, 287 (D.D.C. 2005)).

The public interest demands more than plaintiff's self-interest.

*C. Judicial Estoppel*

Plaintiff, in his Opposition to the defendants' Renewed Motion to Dismiss or for Summary Judgment, argued vehemently, and repeatedly, that the District's exhibits were inadmissible and "may not be considered by the Court" because they were unidentified and unauthenticated. P.Opp. at 46.

In support of his instant motion, however, plaintiff submits some 30 exhibits, 11 of which were previously submitted by the defendants.[6] The Court should take critical note of such a cynical strategy, and the time and effort it required the District and the Court to expend uselessly.

The doctrine of judicial estoppel prohibits parties from "deliberately changing positions according to the exigencies of the moment." *Kopff v. World Research Group, LLC*, 568 F.Supp.2d 39, 43 (D.D.C. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). The purpose of this equitable doctrine is to "protect the integrity of the judicial process" and is invoked "to prevent a party from playing 'fast and loose with the courts.'" *In Defense of Animals v. USDA*, 589 F.Supp.2d 41, 42 (D.D.C. 2008) (citations omitted).

---

[6] Plaintiff's Exhibit No. ("PEx.") 5 is the same as Defendants' Exhibit No. ("DEx.") 6; PEx. 6 is DEx. 7; PEx. 10 is DEx. 9; PEx. 11 is p. 26 of DEx. 10; PEx. 12 is the first seven pages of DEx. 10; PEx. 14 is DEx. 11; PEx. 19 is DEx. 12; PEx. 23 is DEx. 13; PEx. 24 is DEx. 14; PEx. 25 is DEx. 16; and PEx. 27 is DEx. 15.

Typically, when invoking judicial estoppel, the court prohibits the proposing party from arguing the subsequent position, if the opposing party can show, *inter alia*, that the first argument was accepted by the court and that proposing party would impose an "unfair detriment" on the opposing party. *Id*.

While strict application of judicial estoppel might not be appropriate here, because the Court has not yet ruled on plaintiff's earlier objections to the defendants' exhibits, the defendants aver that, at the very least, plaintiff should be estopped from challenging the authenticity or admissibility of any document submitted by the defendants. The Court need look no further than the extensive record on which the Commission based its decision to award summary judgment to the defendants here.

### III. Conclusion

Plaintiff has failed to carry the burden on his motion for partial summary judgment and for emergency injunctive relief. His motion should be denied, and judgment entered for the District on all counts.

DATE: June 19, 2009					Respectfully submitted,

PETER J. NICKLES
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

    /s/ Ellen A. Efros
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431

                /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov

CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on June 19, 2009, copies of the defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment and for Injunctive Relief, and all accompanying documents were filed with the Court's Electronic Case Filing system, sent electronically to roypearsonjr@verizon.net, and sent by U.S. Mail, first-class, postage-prepaid, to:

    Roy L. Pearson, Jr.
    3012 Pineview Court, N.E.
    Washington, D.C. 20018

                /s/ Andrew J. Saindon